**UNITED STATES, Appellee,**

v.

**Clifton R. PRATER, Staff Sergeant,
U.S. Army, Appellant.**

No. 65,000.
CM 8800576.

U.S. Court of Military Appeals.

Argued Feb. 14, 1991.

Decided July 10, 1991.

**434**

For Appellant: *Captain Pamela J. Dominisse* (argued); *Colonel Robert B. Kirby, Lieutenant Colonel Russell S. Estey, Captain Timothy P. Riley* (on brief).

For Appellee: *Captain Mark E. Frye* (argued); *Colonel Alfred F. Arquilla, Lieutenant Colonel Daniel J. Dell'Orto, Major Maria C. Fernandez* (on brief); *Captain James K. Reed.*

## Opinion of the Court

SULLIVAN, Chief Judge:

On March 16, 1988, appellant was tried by a military judge sitting alone as a general court-martial at Fort Campbell, Kentucky. Consistent with his pleas, he was convicted of larceny of over $12,000 worth of military benefits; three specifications of making a false official statement; two specifications of false swearing; adultery; wrongful cohabitation; obstruction of justice; conspiracy to obstruct justice; and conspiracy to make a false official statement, in violation of Articles 121, 107, 134, and 81, Uniform Code of Military Justice, 10 USC §§ 921, 907, 934, and 881, respectively. The military judge sentenced appellant to a bad-conduct discharge, confinement for 1 year, and reduction to Private E–1. The convening authority approved the sentence.

On May 26, 1989, the Court of Military Review reversed a portion of appellant's larceny conviction because it was barred by the statute of limitations. Based on this error, that court reassessed and affirmed the sentence approved by the convening authority. *United States v. Prater*, 28 MJ 818. On June 14, 1989, appellant moved the Court of Military Review to reconsider its earlier decision affirming appellant's guilty pleas to specification 3 of Charge II (making a false official statement). The court granted that motion on September 5, 1989, and vacated its published opinion. In an unpublished opinion of the court on reconsideration dated November 15, 1989, it set aside the conviction of that offense, dismissed specification 3, and affirmed only so much of the sentence as provided for 6 months' confinement and a bad-conduct discharge.

On December 4, 1989, the Government moved the Court of Military Review for a second reconsideration. The court on December 14, 1989, granted the motion and vacated its November decision. In its opinion dated March 30, 1990, the court (2–1) reinstated the conviction for making a false official statement under specification 3 of Charge II; it also affirmed the larceny conviction under Charge I only for conduct between December 24, 1986, and September 1, 1987. The court then reassessed the sentence and affirmed a punishment of 6 months' confinement and a bad-conduct discharge. *United States v. Prater*, 30 MJ 785.

On September 28, 1990, we granted review of the following issue:

WHETHER THE ARMY COURT OF MILITARY REVIEW ERRED BY MISINTERPRETING THE IMPORT OF THIS COURT'S DECISION IN *UNITED STATES V. JACKSON*, 26 MJ 377 (CMA 1988), AND BY IGNORING PRIOR PRECEDENT IN HOLDING THAT THE MILITARY JUDGE HAD NO OBLIGATION TO INQUIRE INTO THE "EXCULPATORY NO" DEFENSE BEFORE ACCEPTING APPELLANT'S PLEA OF GUILTY TO FALSE OFFICIAL STATEMENTS (SPECIFICATION 3 OF CHARGE II).

We find no error by the Court of Military Review or the military judge and affirm that court's 1990 decision.

In its final opinion, the Court of Military Review set forth the facts of appellant's case as follows:

> The appellant Prater and his putative wife Joyce [Chisam] met in 1981. Subsequently, from 1 February 1983 until at least June of 1987, they lived together and held themselves out as husband and wife. While some of Prater's acquaintances suspected that the Praters were not married to each other, appellant claimed Joyce as his wife and received basic allowance for quarters at the "with dependent" rate and other entitlements based on the dependency status of Joyce as appellant's wife.[1] All along, however, the appellant knew that Joyce was not his wife. A stipulation of fact admitted at trial in part states that:
>
> > Prior to 1 February 1983, the accused discovered that the woman [Donna Craven] whom he had married had, in fact, been previously married to another and continued to be so married. This woman left the accused shortly after making this fact known to him. He ceased to support her at that point. Upon his purported marriage to her, he had applied for and began to receive Army pay benefits arising from his alleged status as married with a dependent wife. At the time he applied for these benefits he believed himself to be entitled to them. Upon discovering that his marriage was bigamous, the accused realized that his marriage was invalid and that he had no dependents for Army pay purposes. The accused took no steps to alert the Army to this fact. Knowing that he was not entitled to them, the accused continued to collect Army benefits ... on the false premise that he was married and had a dependent. These benefits included payments of [Basic Allowance for Quarters] [Variable Housing Allowance], Family Separation Allowance, and Dependent Travel/Dislocation Allowance.
>
> Rather than following accepted legal procedures to satisfactorily resolve his marital status, the appellant and his putative wife [Joyce Chisam] attempted to ensure that their meretricious relationship was not discovered by the Army.
>
> The deception worked until April 1987 when Joyce was sexually assaulted and was taken by the appellant and Joyce's friend to a hospital for treatment. There, the appellant signed an emergency card listing Joyce as his wife. At that time, Joyce's friend observed that Joyce had two military identification cards (ID), each bearing a different name. That information was given to military authorities investigating the sexual assault. With other information gathered during that investigation, it led the investigators to question the appellant whether in fact he and Joyce were married. *Responding to the investigators' questions, on 18, 19, and 21 May 1987, the appellant falsely maintained to them that indeed, he and Joyce were married.* These three statements formed the basis for the false official statement charged.

30 MJ at 786–87 (footnote omitted; emphasis added).

The Court of Military Review also explained:

> Dependency based on a soldier's status carries with it such benefits as: increased basic allowance for quarters, family separation allowance, dependent travel allowances, higher weight limitations for household goods shipment, medical and dental care, post exchange and commissary privileges. These benefits inure to the soldier and his spouse at the government's expense.

*Id.* at 786 n. 1.

Appellant's testimony during the providence inquiry further illustrates the circumstances surrounding the challenged false-official-statement offense, as follows:

> [MJ:] Okay, on the 18th, 19th and 21st of May of this year—or of 1987—were you here at Fort Campbell?
>
> ACC: Yes, sir.
>
> MJ: Did you have an occasion to go over to the CID?
>
> ACC: Yes, sir.

MJ: And did you talk to Agents Collie, Cutler and Greene on those days?

ACC: Yes, sir.

MJ: One of them each date? Or all three of them on each date, or what?

ACC: One each day, sir.

MJ: And so you talked to three different agents on three different days?

ACC: Yes, sir.

MJ: Okay. And at the time did they tell you that they were in fact CID agents?

ACC: Yes, sir.

MJ: *And that they were investigating whether or not you were married to Joyce Prater?*

ACC: Yes, sir.

MJ: *Okay. Did they inform you of your rights at that point?*

ACC: *Yes, sir.*

MJ: And did you understand your rights?

ACC: Yes, sir.

MJ: Okay. Did you in fact make statements to them that you were married to Joyce Prater?

ACC: Yes, sir.

MJ: Okay. Were those statements true?

ACC: No, sir.

MJ: Did you tell each one of them that the statements were true?

ACC: Yes, sir.

MJ: That you were married to her?

ACC: Yes, sir.

MJ: Okay. And each time you said that, you knew it was false.

ACC: Yes, sir.

MJ: Okay. And do you agree that you had the intent to deceive?

ACC: Yes, sir.

(Emphasis added.)

——

The defense's claim of error in this case rests on Article 45(a), UCMJ, 10 USC § 845(a), which states:

(a) *If an accused* after arraignment makes an irregular pleading, or *after a plea of guilty sets up matter inconsistent with the plea,* or if it appears that he has entered the plea of guilty improvidently or through lack of understanding of its meaning and effect, or if he fails or refuses to plead, *a plea of not guilty shall be entered in the record, and the court shall proceed as though he had pleaded not guilty.*

(Emphasis added.) Appellant first contends that his plea-inquiry responses raised the so-called "exculpatory no" defense developed in the Federal courts with respect to a false official statement charged under 18 USC § 1001. *See generally United States v. Taylor,* 907 F.2d 801 (8th Cir. 1990). He notes that this Court has recognized this same defense with respect to alleged violations of the military false-official-statement prohibition contained in Article 107. *See United States v. Gay,* 24 MJ 304 (CMA 1987); *United States v. Davenport,* 9 MJ 364, 370 (CMA 1980). Second, appellant argues that his plea-inquiry responses also raise serious questions about the officiality of his false statements as defined in earlier decisions of this Court. *See generally United States v. Geib,* 9 USCMA 392, 26 CMR 172 (1958). For both these reasons, appellant concludes that the judge's acceptance of his pleas as to specification 3 violated Article 45(a).

■ The standard for finding error in a judge's acceptance of a guilty plea was articulated long ago by this Court. In *United States v. Logan,* 22 USCMA 349, 351, 47 CMR 1, 3 (1973), this Court rejected "the mere possibility of conflict" standard for the more realistic "substantial basis" test. *See United States v. Clark,* 28 MJ 401, 407 (CMA 1989). Where the possibility of a defense exists, this Court has indeed suggested that a military judge secure satisfactory disclaimers by the accused of this defense. *United States v. Lee,* 16 MJ 278 (CMA 1983); *United States v. Jemmings,* 1 MJ 414, 418 (CMA 1976). The bottom line, however, is that rejection of the plea requires that the record of trial show a "substantial basis" in law and fact for questioning the guilty plea.

Appellant claims that his guilty-plea responses clearly raised the "exculpatory no" defense to the specification which alleges that he, as a suspect, made false official

statements to criminal investigators under Article 107. We note that this defense has been recognized with respect to a false-official-statement charge under 18 USC § 1001 by the Courts of Appeals of at least seven federal circuits, while those of three other circuits have considered the defense without accepting or rejecting it. *United States v. Taylor, supra* at 804–05; *United States v. White*, 887 F.2d 267, 273–74 (D.C. Cir.1989). *Cf. United States v. Steele*, 933 F.2d 1313 (6th Cir.1991); *United States v. Cogdell*, 844 F.2d 179, 185–87 (4th Cir.1988) (Wilkins, J., concurring in part and dissenting in part).

■ Even this defense, however, is not available in all situations involving the criminal investigation of a suspect. *See United States v. Olsowy*, 836 F.2d 439, 441 (9th Cir.1987); *United States v. Galaniuk*, 738 F.Supp. 225, 227 (E.D.Mich.1990). For example, some circuits hold that this defense does not exist where the false statement is made with respect to a previously submitted claim against the Government. *United States v. Olsowy, supra* at 441; *United States v. Chevoor*, 526 F.2d 178, 183 (1st Cir.1975), *cert. denied*, 425 U.S. 935, 96 S.Ct. 1665, 48 L.Ed.2d 176 (1976). *Cf. United States v. Cogdell, supra* at 184. Others hold that it does not apply to situations where a suspect is given warnings concerning his rights against self-incrimination. *United States v. Tabor*, 788 F.2d 714, 719 (11th Cir.1986); *United States v. King*, 613 F.2d 670, 674–75 (7th Cir.1980). Finally, others hold that it does not extend beyond mere negative responses to questions by a criminal investigator. *United States v. Bakhtiari*, 913 F.2d 1053, 1061–62 (2d Cir.1990); *United States v. King, supra* at 674. *Cf. United States v. Medina de Perez*, 799 F.2d 540, 546 n.9 (9th Cir.1986).

■ Our Court has recognized this defense and its possible application to a false-official-statement charge under Article 107. Yet, we too have never suggested that it applies to all questioning of a suspect by criminal investigators. All three of the above noted exceptions or limitations on

this defense existed in this case. The challenged questions were asked by the military police in regards to earlier submitted military dependency claims. They were asked after appellant was advised of his rights under Article 31, UCMJ, 10 USC § 831. Also, appellant's response was much more than a simple "no." Since additional facts which might otherwise show appellant's entitlement to this defense do not appear on the record, we hold that no "substantial basis" existed for this defense in this case. *United States v. Sievers*, 29 MJ 72, 74 (CMA 1989).

Appellant's alternative, if not somewhat overlapping, argument is that his false statements to military police investigators were not "official" within the meaning of Article 107. He relies heavily on decisions from this Court which were decided prior to the Supreme Court decision in *United States v. Rodgers*, 466 U.S. 475, 104 S.Ct. 1942, 80 L.Ed.2d 492 (1984). Those decisions hold that a criminal investigator's questioning of a suspect, who has no independent duty to answer, is not official within the meaning of Article 107. *See United States v. Osborne*, 9 USCMA 455, 26 CMR 235 (1958); *United States v. Washington*, 9 USCMA 131, 25 CMR 393 (1958); *United States v. Aronson*, 8 USCMA 525, 25 CMR 29 (1957). One case, he notes, specifically holds that questioning by military investigators concerning a suspect's previously submitted request for a change in allotment was not official in the sense of Article 107. *United States v. Geib*, 9 USCMA at 394, 26 CMR at 174.

■ In addressing this lack-of-officiality argument, we note that it contradicts appellant's trial admission of guilt to making a false official statement, in violation of Article 107. In addition, because of these guilty pleas, the record of trial was not fully developed concerning the existence of any particular regulatory duty on a servicemember to inform military authorities of a change in marital status for purposes of receiving dependent benefits. *See United States v. Aronson, supra* at 529, 25 CMR at 33. *Cf. United States v. Geib, supra.*

Accordingly, even if our older cases are still binding, post-trial speculation on the question of the officiality of the statements is not appropriate. *See United States v. Sievers, supra* at 74; *United States v. Harrison,* 26 MJ 474 (CMA 1988).

 In any event, as pointed out by the court below, the decisions cited by appellant do not stand alone in the body of military law applying Article 107. Since those decisions and the decision of the Supreme Court in *United States v. Rodgers, supra,* statements to criminal investigators can now be considered official for purposes of 18 USC § 1001. Moreover, since those decisions and the decision of this Court in *United States v. Jackson,* 26 MJ 377 (CMA 1988), statements to military criminal investigators can now be considered official for purposes of Article 107. Finally, where warnings under Article 31 are given to the criminal suspect, as in the present case, his duty to respond truthfully to criminal investigators, if he responds at all, is now

sufficient to impute officiality to his statements for purposes of Article 107. *See United States v. Jackson, supra* at 379 n.4. *See generally United States v. Osborne, supra* at 457–58, 26 CMR at 237–38 (Latimer, J., dissenting). *See generally United States v. Mandujano,* 425 U.S. 564, 582–83, 96 S.Ct. 1768, 1779–80, 48 L.Ed.2d 212 (1976) (plurality opinion); *Bryson v. United States,* 396 U.S. 64, 72, 90 S.Ct. 355, 360, 24 L.Ed.2d 264 (1969).

The decision of the United States Army Court of Review is affirmed.

Judge COX concurs.

EVERETT, Senior Judge (concurring):

*See* my opinions in *United States v. Sievers,* 29 MJ 72, 74 (CMA 1989), and *United States v. Davenport,* 9 MJ 364 (CMA 1980) ("exculpatory no"); and *United States v. Jackson,* 26 MJ 377 (CMA 1988) (nature of "officiality" regarding false official statement).