**UNITED STATES, Appellee,**

v.

**Specialist Andrian M. SANCHEZ, Jr., 440–84–9980, United States Army, Appellant.**

**ACMR 9200926.**

U.S. Army Court of Military Review.

28 Dec. 1993.

For Appellant: Captain Don F. Pollack, JAGC (argued), Colonel Stephen D. Smith, JAGC, Major Robin L. Hall, JAGC, Captain Clayton R. Diedrichs, JAGC, Captain Robert L. Carey, JAGC (on brief).

For Appellee: Captain R.W. Clark, JAGC (argued), Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Joseph A. Russelburg, JAGC, Major James L. Pohl, JAGC, Major Kenneth T. Grant, JAGC, Major Donna L. Barlett, JAGC, Captain John P. Saunders, JAGC (on brief).

Before GRAVELLE, JOHNSTON, and BAKER, Appellate Military Judges.

## OPINION OF THE COURT

BAKER, Judge:

The appellant was tried by a military judge sitting as a general court-martial. Contrary to his pleas, he was found guilty of larceny of two pool cues and making a false

official statement, in violation of Articles 121 and 107, Uniform Code of Military Justice, 10 U.S.C. §§ 921 and 907 (1988) [hereinafter UCMJ].[1] He was sentenced to a bad-conduct discharge, confinement for three months, forfeiture of $400.00 pay per month for three months, and reduction to Private E1. The convening authority reduced the amount of forfeitures to $200.00 pay per month for three months but otherwise approved the sentence.

The violation of Article 107, UCMJ, alleged in this case was that the appellant did "with intent to deceive, make to CPT Richard S. Hickenbottom, an official statement, to wit: 'I did not steal Specialist Williamson's pool cues;' which statement was totally false, and was then known by [the appellant] to be so false." This court specified the following issue:

> WHETHER A CONVICTION FOR FALSE OFFICIAL STATEMENT IN VIOLATION OF ARTICLE 107, UCMJ, FOR THE MERE DENIAL THAT ONE HAS COMMITTED SOME OFFENSE, ALBEIT DURING A CRIMINAL INVESTIGATION AND AFTER WARNINGS UNDER ARTICLE 31, UCMJ, SHOULD BE SET ASIDE BASED ON THE "EXCULPATORY NO" DOCTRINE.

After carefully considering the briefs submitted by opposing counsel and their oral arguments, we conclude that the "exculpatory no" doctrine does not require that we set aside the appellant's conviction for violating Article 107, UCMJ.

The "exculpatory no" doctrine is a technical defense to prosecution for false statements which involve mere negative responses to questions by law enforcement or other governmental officials. The term itself is of relatively recent origin. In the federal courts it was first used in *United States v. McCue*, 301 F.2d 452 (2nd Cir.1962), which involved a prosecution for the violation of the federal false statement statute, 18 U.S.C. § 1001. *McCue* traced the doctrine to decisions limiting the application of Section 1001

through rules of statutory construction. "Whether or not a simple 'no' is a statement from the standpoint of grammar and syntax, I do not construe it to be a statement within the contemplation of Section 1001." *United States v. Davey*, 155 F. Supp. 175, 177 (S.D.N.Y.1957). "[T]he legislative intent in the use of the word 'statement' does not fairly apply to the kind of statement … where the defendants did not volunteer any statement or representation for the purpose of making claim upon or inducing improper action by the government against others." *United States v. Stark*, 131 F.Supp. 190, 206 (D.Md.1955). Recent application of the doctrine is also premised on "latent distaste for an application of the statute that is uncomfortably close to the Fifth Amendment." *United States v. Payne*, 750 F.2d 844, 861 (11th Cir.1985). The concern seems to be that merely saying "no" is not materially different from pleading "Not Guilty" or saying nothing at all—both "protected" by the Fifth Amendment. *See Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).

Neither the original statutory construction rationale nor the more recent Fifth Amendment rationale for the "exculpatory no" doctrine is without its weak points. While no federal appellate court has rejected the doctrine outright, its application in the various circuits has been mixed. *See United States v. White*, 887 F.2d 267, 273 (D.C.Cir.1989) (collecting cases). The United States Supreme Court has not directly considered the doctrine but, in a Section 1001 case, stated strongly that there is no "privilege to answer fraudulently a question that the Government should not have asked. Our legal system provides methods for challenging the Government's right to ask questions—lying is not one of them." *Bryson v. United States*, 396 U.S. 64, 72, 90 S.Ct. 355, 360, 24 L.Ed.2d 264 (1969) [footnote omitted].

The Court of Military Appeals recognized the potential for application of the "exculpatory no" doctrine to prosecutions for violations of Article 107, UCMJ, in *United States*

---

1. The appellant pleaded guilty to wrongful appropriation of two pool cues in violation of Article 121, UCMJ.

*v. Davenport,* 9 M.J. 364, 370 (C.M.A.1980). In that case, as in all subsequent reported cases, military appellate courts have determined that the circumstances did not merit its application.[2] In *United States v. Prater,* 32 M.J. 433 (C.M.A.1991), for example, the court found no "substantial basis" for questioning the military judge's failure to raise "exculpatory no" as a defense before accepting a guilty plea to an Article 107, UCMJ, violation. *Prater* focused on three factors: the accused's statement was more than a simple response to questioning, it was made with respect to a previously submitted claim against the government, and the questioner had provided Article 31, UCMJ, rights warnings.[3]

 Although the specification in the case at bar indicates more than a simple negative response, the proof—testimony by the appellant's company commander—is that the appellant did, in fact, merely reply "no" to the commander's initial inquiry.[4] We note that he continued to prevaricate, indicating he had not even been present when three soldiers from his unit allegedly confronted him at his off-post apartment and recovered the pool cues but, instead, had been at a movie with his wife and cousin. This was not only false but deliberately misleading. Better practice would have been to include all the false averments in the specification. Doing so would have precluded the objection for uncharged misconduct made in this case. While the military judge properly ruled that the additional averments were admissible as evidence of the appellant's intent to deceive, including them would have avoided the "exculpatory no" issue altogether.

 The two remaining *Prater* factors are related. Proof that a statement involved a previously submitted claim and that Article 31, UCMJ, warnings were provided both help establish that an accused knew his statement was official. Proof that a person has an independent duty or obligation to speak accomplishes a similar function and the law is settled that "[w]hile [such a] person could remain silent (Article 31(b)), if the person chooses to speak, the person must do so truthfully." Manual for Courts–Martial, United States, 1984, Part IV, para. 31c(6)(b) [hereinafter MCM, 1984]. The government need not prove that an accused knew his statement was official just as it need not prove that the statement was material. *See* MCM, 1984, Part IV, para. 31c(3). Like materiality, though, knowledge of officiality is evidence of the intent to deceive, which is an element of the offense.

 Reading Article 31, UCMJ, rights to a suspect establishes more than just knowledge of officiality. It also ensures a suspect is aware of the option to remain silent and provides an opportunity for reflection. Absent some showing of government overreach, which would probably be resolved by a finding of involuntariness or inadequacy of warnings anyway, there is no need to apply the "exculpatory no" doctrine in such a case—even to a mere denial that one has committed an offense. We conclude specifically that the reading of rights under Article 31, UCMJ,

---

**2.** In *United States v. Hudson,* 37 M.J. 992 (A.C.M.R.1993), a plea to a violation of Article 107, UCMJ, was held to be improvident because the military judge never secured a satisfactory disclaimer of an "exculpatory no" *defense.* The opinion noted, however, that the military judge had found "substantial evidence and serious questions concerning whether appellant's statement was admissible because of violations of [appellant's] Article 31, UCMJ, and 5th Amendment rights." 37 M.J. at 994.

**3.** *Prater* also held that the reading of rights under Article 31, UCMJ, establishes that responses are official for purposes of Article 107, UCMJ. This modified previous law, which provided generally that "[a] statement made by an accused or suspect during an interrogation is not an official statement within the meaning of article [107, UCMJ,] if that person did not have an independent duty or obligation to speak." Manual for Courts–Martial, United States, 1984, Part IV, para. 31c(6)(a).

**4.** We consider the government's "summarization" of question and response in the specification to be acceptable. Including the phrase "or words to that effect" would, however, have been appropriate. We might view this matter differently had the appellant sought greater specificity at trial or were he now arguing that the variance somehow prejudiced him. *See United States v. Hunt,* 37 M.J. 344 (C.M.A.1993) *petition for cert. filed* 62 U.S.L.W. 3378 (U.S. Nov. 16, 1993) (No. 93–771).

warnings is sufficient by itself to overcome the doctrine.

We do not favor expansive application of a doctrine which runs contrary to the absolute standards of honesty and integrity expected in all who serve in our armed forces. False official statements have the potential to interfere with mission accomplishment or even result in loss of life. They reduce the mutual trust and confidence so important to success on the battlefield. Concerns about "overreaching" commanders and investigators who ask "improper" questions or only pay lip service to the right to remain silent are best dealt with directly—not through a technical defense. Our reluctance to apply the "exculpatory no" doctrine should not, however, be perceived as a refusal to recognize it. The Court of Military Appeals having spoken, we cannot refuse to apply the doctrine in the appropriate case.

We have reviewed the assertions of error raised in the appellant's original pleading, to include those raised personally by the appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), and find them to be without merit.

The findings of guilty and the sentence are affirmed.

Senior Judge GRAVELLE and Judge JOHNSTON concur.