UNITED STATES

v.

**Rohan A. COOMBS, 122 64 9895
Private First Class (E–2),
U.S. Marine Corps.**

NMCM 93 00139.

U.S. Navy–Marine Corps Court of
Military Review.

Sentence Adjudged 6 Aug. 1992.

Decided 11 April 1994.

LT Paul J. Ferdenzi, JAGC, USNR, Appellate Defense Counsel.

LCDR David B. Auclair, JAGC, USN, Appellate Government Counsel.

Before ALBERT A. REED, C.J., and JAMES E. ORR and T.A. LAWRENCE, JJ.

ORR, Senior Judge:

We have examined the record of trial, the summary assignments of error,[1] and the Government's reply thereto, and we have concluded that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed.

In his first assignment of error, the appellant fails to indicate what he considers inadequate in the staff judge advocate's post-trial recommendation, which included information that the appellant had served in the U.S. Marine Corps approximately 4 years before his current enlistment began and that he had received a Good Conduct Medal. If there was more information the appellant believes the recommendation should have included, his trial defense counsel failed to identify it following receipt of the appellant's copy of the recommendation, and the appellant has failed to identify it before this Court.

The issue raised by the appellant in his second assignment of error has been previously addressed by this Court and resolved contrary to his contention. *See United States v. Mitchell,* 37 M.J. 903 (N.M.C.M.R.) (en banc), *petition granted,* 38 M.J. 313 (C.M.A.1993).

Concerning the issue raised by Judge Lawrence in his dissenting opinion concerning the providence of the appellant's guilty plea to the possession of drug abuse paraphernalia, the specification charged the appellant with violating Secretary of the Navy Instruction 5300.28B, dated 11 July 1990,

---

1. I. THE CONVENING AUTHORITY TOOK ACTION ON INCOMPLETE INFORMATION BECAUSE THE STAFF JUDGE ADVOCATE'S RECOMMENDATION FAILED TO COMMENT ON APPELLANT'S FOUR YEARS OF HONORABLE SERVICE FROM HIS PRIOR ENLISTMENT. (CITATIONS OMITTED.)

II. THE JUDGE ADVOCATE GENERAL OF THE NAVY'S PREPARATION OF THE NAVY–MARINE CORPS COURT OF MILITARY REVIEW JUDGE'S FITNESS REPORTS DEPRIVES THE COURT OF ITS INDEPENDENCE AND ITS APPEARANCE OF INDEPENDENCE. (CITATION OMITTED.)

Subj: MILITARY ALCOHOL AND DRUG ABUSE PREVENTION AND CONTROL (hereinafter "SECNAVINST 5300.28B") but did not allege what that paraphernalia was in the text of the specification. As we recently pointed out, the definition of drug abuse paraphernalia in the directive is limited to "equipment, products, and materials ... that are used, intended for use, or designed for use in injecting, ingesting, inhaling, or otherwise introducing into the human body in any manner drugs, chemicals or other controlled substances in violation of law." *United States v. Painter,* 39 M.J. 578, 580 (N.M.C.M.R.1993) (quoting SECNAVINST 5300.28B, ¶ 4.f).

The specifications in question in *Painter,* like the one in the case before us now, did *not* list the specific objects the Government believed to be drug abuse paraphernalia. *Painter,* however, was a contested case. While the appellant here pled guilty to this offense pursuant to a pretrial agreement that provided for the withdrawal of several offenses and for the appellant to pled guilty to, among others, four offenses alleging the possession of 24 grams of cocaine with the intent to distribute, the possession of six 2–3 gram baggies of marijuana with the intent to distribute, the distribution of 1.54 grams of cocaine, and the distribution of 1.1 grams of marijuana and 2 grams of cocaine on the same occasion. The appellant was not charged with using any controlled substance, but in extenuation and mitigation the appellant made an unsworn statement in which he spoke of his use of marijuana and cocaine and his efforts to overcome what he described as his drug problem.

As part of the providence inquiry, the military judge read the definition of drug abuse paraphernalia from the directive as quoted above and then asked the appellant if he understood the definition. The appellant answered affirmatively. Record at 12. Shortly thereafter, the following dialogue ensued.

MJ: Where, exactly, were you on the station at the time you violated this order, please?

ACCUSED: I was at the barracks, in my room, sir.

MJ: What type of drug paraphernalia was it?

ACCUSED: Razor blades, and a sheet of glass, and a small scale.

MJ: And would you tell me, in your own words, please, how you violated this order.

ACCUSED: I used the glass to put some cocaine on it, sir—and the razor to cut it up, sir.

MJ: And did you, in fact, bring that paraphernalia into your room?

ACCUSED: Yes, sir.

MJ: And you brought it in there for the purpose that you just described to me?

ACCUSED: Yes, sir.

MJ: So, you knew at the time that it was drug paraphernalia—

ACCUSED: Yes, sir.

Record at 13.

Although some of these questions tend to blur the distinction in the directive between objects that are used for "injecting, ingesting, inhaling, or otherwise introducing into the human body" and objects that might have some broader use in aid of abusing drugs, the judge read the appropriate definition, the appellant said he understood it, and from his own mouth he said those objects—the razor blades, glass sheet, and scale—met the definition. Under these circumstances, so long as any *one* of the objects meets the definition as a matter of law, the plea would be provident even though the judge's questions concerning how the appellant used them were not as specific as they might have been—perhaps because the appellant was not actually charged with using illegal drugs—and the appellant's answers are somewhat ambiguous—in that putting cocaine on the glass and using the razor blade to cut it up could be preparation for distributing, as well as for using drugs. Nevertheless, the use of a piece of glass or a mirror as a surface for making "lines" of cocaine to be inhaled and of a razor blade or other sharp, stiff tool to make those "lines" is a commonly recognized method of abusing drugs.[2]

2. Of the three objects, the scale may be the least   likely to fit within the Secretary's definition.

We do not agree with our brother that the appellant's responses suggest he used the scale, glass, and razor blades to separate and package drugs for distribution. We also disagree with Judge Lawrence's conclusion that the "[a]ppellant did not state that he used or intended to use these items in ingesting drugs...." As we have stated, the military judge read the definition of drug abuse paraphernalia from the directive, the appellant stated he understood it, and when asked what paraphernalia he possessed, the appellant responded by naming the three objects in issue. Although not a direct statement that he used the objects for inhaling cocaine, the response certainly implies it, and this Court has certainly relied upon inferences to sustain guilty pleas in the past. *See United States v. Silas*, 31 M.J. 829 (N.M.C.M.R. 1990) (per curiam) (inferring dishonorable conduct and a purpose of evasion from accused's writing a series of drafts he knew were in excess of account's capacity to pay them); *United States v. Souza*, 30 M.J. 715 (N.M.C.M.R.) (per curiam), *petition denied*, 31 M.J. 436 (C.M.A.1990) (inferring that accused committed at least one indecent act during period not barred by 2–year statute of limitations when accused said he stopped committing such acts in 25th month of the 36–month period alleged in the specification); *United States v. Ortiz*, 25 M.J. 840 (N.M.C.M.R.), *petition denied*, 27 M.J. 1 (C.M.A.1988) (inferring force and lack of consent from accused's statements that he was aggressor in seeking sexual intercourse with his minor step-daughter and used mental pressures and threats to withhold permission for social activities despite accused's statement that no physical force was applied); *United States v. Woods*, 25 M.J. 916 (N.M.C.M.R.1988) (per curiam), *petition denied*, 28 M.J. 345 (C.M.A.1989) (inferring wrongfulness when accused admitted that elements described what he did and facts elicited revealed no justification, excuse, or permission for his use of marijuana). In *United States v. Thatch*, 30 M.J. 623 (N.M.C.M.R. 1990), we set aside a conviction for being drunk on station after we found the accused's plea to be improvident because there was insufficient factual basis to support the accused's admission that his conduct was prejudicial to good order and discipline. *Id.* at 625. Nevertheless, we stated that such an admission would be sufficient where the conduct, on its face, was service discrediting or prejudicial to good order and discipline or where such an inference could be drawn at the appellate level based on all of the facts and circumstances revealed in the providence inquiry. *Id.*

Apparently, Judge Lawrence would rather infer that the glass and razor blades were being used as a step in the distribution process rather than as a means of inhaling an illegal substance because the other offenses the appellant pled guilty to were distribution or distribution-related offenses. At this point in the trial, however, where these questions about the paraphernalia offenses were being asked, no other offenses had been discussed and the judge had not even recited the elements of the other offenses. *See* record at 14.

To reject a guilty plea "requires that the record of trial show a 'substantial basis' in law and fact for questioning the guilty plea." *United States v. Prater*, 32 M.J. 433, 436 (C.M.A.1991). In this case, we find no such basis to question the appellant's plea.

Accordingly, the findings and sentence, as approved on review below, are affirmed.

Senior Judge REED concurs.

LAWRENCE, Judge (dissenting):

Based on *United States v. Painter*, 39 M.J. 578 (N.M.C.M.R.1993), I conclude that the providence inquiry regarding Specification 1 of Charge I is inadequate. The three items that appellant possessed as alleged drug abuse paraphernalia are a razor blade, a sheet of glass, and a scale. Appellant did not state that he used or intended to use these items in ingesting drugs—to the contrary, his responses suggest he used them to separate and package the drugs for distribution. Further, these items are not designed for use in ingesting drugs. I agree with the majority in all other regards. I would set aside and dismiss the findings of guilty of Specification

1 of Charge I, affirm the remaining findings of guilty, and reassess the sentence.