# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS

## Washington, DC

## UNITED STATES

### v.

### John D. ANDERSON
### Seaman Apprentice (E-2), U.S. Coast Guard

### CGCMG 24201

### Docket No.  1138

### 27 April 2001

Special Court-Martial convened by Commanding Officer, USCGC POLAR SEA (WAGB-11).
Tried at Seattle, Washington on March 16, 2000.

| | |
|---|---|
| Military Judge: | LCDR Rosanne Trabocchi, USCG |
| Trial Counsel: | LTJG David O'Connell, USCG |
| Assistant Trial Counsel: | LT Daniel C. Kelleher , USCG |
| Detailed Defense Counsel: | LT Stacy F. Acri, JAGC, USNR |
| Appellate Defense Counsel: | LCDR Jeffrey. C. Good, USCG |
| Appellate Government Counsel: | LTJG Mark A. Cunningham, USCGR |

### BEFORE
### PANEL ONE
### BAUM, KANTOR, AND CASSELS
Appellate Military Judges

BAUM, Chief Judge:

Appellant was tried by a special court-martial, military judge alone.  Pursuant to his pleas of guilty, entered in accordance with a pretrial agreement, he was convicted of the following offenses: four specifications of wrongfully using marijuana, one specification of wrongfully using hallucinogenic mushrooms containing psilocyn, one specification of wrongfully distributing hallucinogenic mushroom tea containing psilocyn, and one specification of wrongfully introducing marijuana onto a military installation in violation of Article 112a of the Uniform Code of Military Justice (UCMJ); and one specification of dereliction of duties in violation of Article 92, UCMJ. Appellant was sentenced to a bad-conduct discharge, confinement for four months, and reduction to paygrade E-1.  The convening authority approved the sentence but stated that he was suspending confinement in excess of ninety (90) days for a period of twelve (12) months from the date of trial, which was required by the pretrial agreement.

Before this Court, Appellant has assigned three errors: first, that a witness' opinion of Appellant's military character was inadmissible; second, that there was no factual basis to conclude that the mushrooms Appellant used and distributed contained psilocyn, a Schedule I controlled

substance; and third, that the convening authority's act of suspending Appellant's confinement was a nullity.

## I and II

### Character Evidence and Factual Basis for Guilty Plea

With respect to assignment I, the Government has conceded that the opinion evidence of Appellant's character was not admissible during the prosecution's case-in-chief, but submits that the same evidence is admissible during rebuttal if the accused introduces evidence of military character, which Appellant did during his case on sentencing. From the Government's perspective, then, the prosecution's evidence might have been out of sequence, but it was not prejudicial to Appellant's substantial rights. Moreover, according to the Government, we may assume that the military judge, as sentencing authority, was not inappropriately influenced by the premature admission of evidence that was admissible on rebuttal. We agree with the Government's assessment, and reject this assignment for that reason.

In assignment II, Appellant contends that the findings of guilty of wrongful use and distribution of substances containing psilocyn should be set aside because the inquiry into Appellant's guilty pleas does not establish that the mushroom tea he ingested contained the prohibited substance psilocyn. Appellant freely admitted his guilt to ingesting and distributing mushroom tea containing psilocyn, and, when asked by the judge if he knew the mushrooms, from which he made the tea, contained psilocyn, a schedule 1 controlled substance, he responded affirmatively. Although he did not know the exact name psilocyn at the time, he knew that it was present, having been told that the mushrooms were hallucinogenic. He also said he knew that they were prohibited. Most importantly, he stated that the mushrooms had a hallucinogenic effect on him after ingestion and he described that effect. Appellant now contends that that there are hallucinogenic mushrooms that are not prohibited, that only those containing psilocyn constitute contraband, and that a factual basis for concluding that these mushrooms contained psilocyn was not established. The time for raising such an issue was at trial. At this point, an appellate court should not set aside a guilty plea that has been accepted at trial on "the mere possibility of conflict," *United States v. Prater*, 32 M.J. 433, 436 (CMA 1991). In order to invalidate the guilty finding, there must be "a 'substantial basis' in law and fact for questioning the guilty plea." *United States v. Eberle*, 44 M.J. 374, 375 (1996), citing United States *v. Prater*, supra. See also *United States v. Keith*, 48 M.J. 563 (C.G.Ct.Crim.App. 1998). There is nothing in this record that substantially conflicts with Appellant's guilty pleas and his answers provide a sufficient factual basis for his guilt. Accordingly, the assignment is rejected.

## III

### The Convening Authority's Purported Suspension of Confinement

Appellant was sentenced at trial to four months confinement. More than four months later, 142 days after the sentence was adjudged, the convening authority approved the confinement and purported to suspend that portion in excess of 90 days in compliance with the pretrial agreement's sentence terms. According to Appellant, that attempted suspension was a nullity because the four

months of adjudged confinement had already run. Citing Article 57 (b), UCMJ, and *United States v. Ledbetter*, 2 M.J. 37 (CMA 1976), Appellant asserts that confinement begins to run from the date it is adjudged, and that he is entitled to confinement credit whether or not he is actually confined, unless the confinement is suspended or deferred. Appellant has correctly stated the law in this regard. Without a deferral of confinement or a suspension prior to the expiration of adjudged confinement, the entire period runs unimpeded from the date of trial. In that event, there would be no confinement to suspend when the convening authority ultimately acts on the sentence after the period of confinement has run. That is exactly what happened in this case.

This outcome would have been prevented, however, by deferral of the confinement to be suspended, if a clause in the pretrial agreement had been allowed to stand. That clause read as follows:

> This agreement constitutes a request by the accused for, and approval by the convening authority of, deferment of the portion of any confinement to be suspended pursuant to the terms of this agreement. The period of deferment will run from the date the accused is sentenced to confinement, if any, until the date the convening authority acts on the sentence.

Unfortunately, when it came time at trial to spell out the import of that provision, no one was able to do so. Neither the trial counsel nor the defense could explain to the military judge the meaning of this deferral clause. After a lengthy discussion on the meaning of the provision, trial counsel offered to strike the provision, and that offer was accepted by the military judge and acquiesced to by Appellant and his counsel. Without that provision, the confinement ran continuously from the date it was imposed until the entire period of adjudged confinement expired four months after trial. As a result, there was no confinement for the convening authority to suspend when he took action on the sentence. In order to correct this situation, we will follow the approach taken in *United States v. Lamb*, 22 M.J. 518 (NMCMR 1986). In the absence of any claim to the contrary, we presume that Appellant was not required to serve confinement beyond the 90 days for which he had bargained, and we will eliminate any risk of prejudice to Appellant from the attempted suspension by affirming only 90 days confinement.

Before leaving this issue, something needs to be said about the inability of counsel to explain the deferral clause when queried by the judge. Presumably, both counsel were fully involved in negotiations concerning the terms of the agreement and those terms were explained to the accused and the convening authority before the agreement was finalized. If counsel could not explain a particular term to the judge, it raises questions concerning their understanding of the ramifications of the agreement and the explanations they provided the accused and the convening authority. Fortunately, given our corrective action and the judge's proper step in accepting the offer to strike the unexplained provision from the agreement, there was no apparent prejudice to the accused from defense counsel's inability to explain all the provisions. Counsel are cautioned that they have an obligation to fully understand and be able to correctly explain the terms of an agreement before it is signed. Moreover, after it is signed, they have to be able to explain those terms to the judge. If they are unable to do so, the judge must ensure that corrective action is taken, as was done here. The facts of this case validate the continuing need for inquiry into and a careful explanation by the military judge of each provision of a plea bargain to ensure that all parties have the same understanding of the terms, and that the accused, in particular, understands. This case underscores

the fact that procedures calling for such explanations in open court are necessary and that the military justice system should not rely solely on the assumption that correct explanations and understandings were reached before trial.

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, we have determined that the findings of guilty are correct in law and fact and they are affirmed. On the basis of the foregoing discussion, only so much of the sentence approved below as provides for a bad conduct discharge, confinement for 90 days, and reduction to paygrade E-1 is affirmed.

Judges Kantor and Cassels concur.



For the Court,

//s//

J. H. Baum
Chief Judge