*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

_____

Before
MONAHAN, STEPHENS, and DEERWESTER
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Roger J. SALAZAR**
Private (E-1), U.S. Marine Corps
*Appellant*

**No. 202000134**

Decided: 27 September 2021

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges:
Andrea C. Goode (arraignment)
John P. Norman (trial)

Sentence adjudged 25 February 2020 by a general court-martial convened at Marine Corps Base Camp Pendleton, California, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: confinement for 30 months and a dishonorable discharge.

For Appellant:
*Commander C. Eric Roper, JAGC, USN*

For Appellee:
*Lieutenant Jennifer M. Joseph, JAGC, USN*
*Lieutenant Gregory A. Rustico, JAGC, USN*

*Adminstrative correction to appellate counsel.*

_____

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under
NMCCA Rule of Appellate Procedure 30.2.**

_____

PER CURIAM:

Appellant was convicted, pursuant to his pleas, of one specification of aggravated assault by strangulation of an intimate partner, one specification of aggravated assault with a dangerous weapon upon an intimate partner, and one specification of assault consummated by a battery, in violation of Article 128, Uniform Code of Military Justice [UCMJ].[1]

Appellant did not initially assert a specific assignment of error. Following our preliminary review, however, this Court specified the following issue: whether the knife which Appellant used to assault the victim constituted a dangerous weapon. After considering the record and the briefs of the parties we find no prejudicial error and affirm.

## I. BACKGROUND

Appellant and Private First Class (E-2) [PFC] Jones[2] began a romantic relationship in May 2019. Throughout their approximately two-month-long relationship, Appellant would become physically violent towards PFC Jones when angry or frustrated with her. These acts of violence included grabbing her by the neck and strangling her, striking her with his hand on her legs, arms, and torso, and pushing her on her torso.

On 23 June 2019, during a fight about their relationship, Appellant withdrew a Leatherman brand knife from his pocket, opened it, and poked PFC Jones's leg with its blade. He then took the knife and carved her name into his own ankle. Although he did not cut her, during his subsequent guilty plea providence inquiry, Appellant admitted that he poked PFC Jones to frighten and intimidate her. Appellant knew that PFC Jones was frightened

---

[1] 10 U.S.C. § 928.

[2] All names in this opinion, other than those of Appellant, the judges, and counsel are pseudonyms.

and intimidated by his actions because of "the way she reacted," and she said, "stop."[3]

In his brief on the specified issue, Appellant contended that he did not use his Leatherman knife in a manner that should cause it to be considered a dangerous weapon. Appellant therefore now asks us, regarding Specification 2 of Additional Charge II, to affirm only a conviction for the lesser included offense of simple assault and reassess his sentence accordingly.

## II. DISCUSSION

### A. Standard of Review

We review the military judge's decision to accept a guilty plea for an abuse of discretion.[4] "An appellant who challenges the providency of a guilty plea must demonstrate a substantial basis in law and fact for questioning the guilty plea."[5] "A mere possibility of such a conflict is not a sufficient basis to overturn the trial results."[6]

### B. Law and Analysis

There are three requisite elements to the charge of assault with a dangerous weapon:

> (1) That the accused offered to do bodily harm to a certain person;

> (2) The offer was made with the intent to do bodily harm; and

> (3) That the accused did so with a dangerous weapon.[7]

The definition for what qualifies as a "dangerous weapon" is dependent on the circumstances of each particular case. "What constitutes a dangerous

---

[3] R. at 177.

[4] *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008).

[5] *United States v. Pena*, 64 M.J. 259, 267 (C.A.A.F. 2006) (quoting *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991)).

[6] *United States v. Garcia*, 44 M.J. 496, 498 (C.A.A.F. 1996) (citing *Prater*, 32 M.J. at 436) (internal quotation marks omitted).

[7] *Manual for Courts-Martial, United States* (2019 ed.) [*MCM*], pt. IV, para. 77.b.(4)(a). In this case, the offense of which Appellant was convicted also included the aggravator that the victim was his intimate partner.

weapon depends not on the nature of the object itself but on its capacity, given the manner of its use, to kill or inflict grievous bodily harm."[8] Appellant argues he "did not use the knife in a manner likely to produce death or grievous bodily harm."[9] Indeed, he poked PFC Jones with the blade of his knife, causing it to make contact with her leg; however, it did not actually injure her.

Although we agree with Appellant that he did not use his knife in a way so as to cause grievous bodily harm to PFC Jones, our analysis does not stop there. The first element of aggravated assault with a dangerous weapon is that the accused offered to do bodily harm to a certain person. An "offer-type assault is an unlawful demonstration of violence, either by an intentional or by a culpably negligent act or omission, which creates in the mind of another a reasonable apprehension of receiving immediate bodily harm."[10] Therefore, when we assess the sufficiency of the guilty plea to this offense, we do not ask if the weapon's use actually caused grievous bodily harm. Rather, we ask if the weapon's use would cause the victim to reasonably fear receiving immediate bodily harm. This leads us to consider what constitutes "reasonable apprehension" and what constitutes "bodily harm."

While brazen acts, like holding a knife to another's throat or a gun to another's head, are clear ways of creating reasonable apprehension of immediate bodily harm, they are not the only ways to elicit that fear. Courts have found such reasonable apprehension even when the weapon used did not touch the victim. In *United States v. Smith*, the United States Court of Military Appeals affirmed a conviction for assault with a dangerous weapon when the appellant brandished a knife at the victim from several yards away.[11] The *Smith* Court reasoned, "We must register dissent from the position that an open long-bladed knife in the hand of an oncharging attacker may not constitute a 'dangerous weapon' solely and only because the assailant has not yet reached his target."[12] Moreover, as our sister court articulated

---

[8] *Id.*, para. 77.c.(5)(a)(iii).

[9] Appellant's Br. at 4.

[10] *MCM*, pt. IV, para. 77.c.(2)(b)(ii).

[11] *United States v. Smith*, 4 C.M.A. 41, 15 C.M.R. 41 (1954).

[12] *Id.* 4 C.M.A. at 46, 15 C.M.R. at 46. *See also United States v. Norton*, 1 C.M.A. 411, 420–22, 4 C.M.R. 3, 12–14 (C.M.A. 1952) (affirming the appellant's conviction for assault with a dangerous weapon, namely by poising a knife close to the victim "indicating an intent to strike").

in *United States v. Rendon*, there is no requirement to show that an accused used the knife "in a manner likely to produce death or grievous bodily harm" because "to hold otherwise would mean that aggravated assault could never be committed through an 'offer' type assault—a result clearly not intended by Article 128, UCMJ."[13]

Here the victim's apprehension of immediate bodily harm was reasonable, as was each victim's apprehension in *Smith* and *Rendon*.

We must now address whether Appellant's use of the knife constituted an offer to do bodily harm. The military judge correctly defined assault for Appellant:

> an unlawful offer made with force or violence to do bodily harm to another, whether or not the offer is consummated. An offer to do bodily harm is an unlawful demonstration of violence by an intentional act or omission which creates in the mind of another a reasonable apprehension of receiving immediate bodily harm.[14]

During the providence inquiry, Appellant told the military judge that he "poked" the victim's body with his knife.[15] At first blush, the word 'poke' may conjure an image of an inoffensive touching. However, the providence inquiry elicited sufficient facts to establish that Appellant's use of the knife created a reasonable fear in PFC Jones of immediate bodily harm. Furthermore, when the military judge asked Appellant why he poked her with the knife, Appellant replied, "to scare and intimidate her, Your Honor."[16] Appellant also acknowledged that he could see PFC Jones looked scared by the way she reacted and because she said "stop" when he brandished the knife.[17]

The record demonstrates PFC Jones was reasonably scared Appellant was about to harm her, and Appellant's knife, despite not being used to cause grievous bodily harm, was indeed a dangerous weapon. Appellant's actions constituted an offer-type assault with a dangerous weapon. Thus, we find no

---

[13] *United States v. Rendon*, No. ACM 34306, 2001 CCA Lexis 355 at *6 (A.F. Ct. Crim. App., Dec. 14, 2001) (unpublished).

[14] R. at 172.

[15] R. at 174.

[16] R. at 176.

[17] R. at 177.

substantial basis in law and fact to question Appellant's guilty plea to Specification 2 of Additional Charge II.

### III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[18]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court

---

[18] Articles 59 & 66, UCMJ.