*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————

## UNITED STATES
Appellee

**v.**

## Byunggu KIM, Sergeant First Class
United States Army, Appellant

**No. 22-0234**
Crim. App. No. 20200689

Argued February 7, 2023—Decided May 5, 2023

Military Judges: Mary Catherine Vergona
and Troy A. Smith

For Appellant: *Captain Carol K. Rim* (argued); *Colonel Michael C. Friess, Lieutenant Colonel Dale C. McFeatters*, and *Major Bryan A. Osterhage* (on brief); *Major Julia M. Farinas, Major Rachel P. Gordienko,* and *Jonathan F. Potter*, Esq.

For Appellee: *Captain Joshua A. Hartsell* (argued); *Colonel Christopher B. Burgess, Lieutenant Colonel Jacqueline J. DeGaine*, and *Major Pamela L. Jones* (on brief).

Judge SPARKS delivered the opinion of the Court, in which Chief Judge OHLSON, Judge MAGGS, Judge HARDY, and Judge JOHNSON joined.

———————

Judge SPARKS delivered the opinion of the Court.

This case arises out of the conviction of Sergeant First Class Byunggu Kim (Appellant), in accordance with his pleas, of four specifications of sexual abuse of a child and one specification each of making an indecent recording, assault consummated by a battery, and indecent conduct in violation of Articles 120b, 120c, 128, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920b, 920c, 928, 934 (2018). The military judge sentenced Appellant to a dishonorable discharge, 130 months of confinement, and reduction to grade E-1. In keeping with the plea agreement, the convening authority reduced the confinement to six years and otherwise approved the sentence.

The United States Army Court of Criminal Appeals affirmed the findings and sentence in a summary disposition. Appellant then petitioned this Court and his petition was granted on November 7, 2022.

This Court granted oral argument to resolve three questions,[1] including whether the military judge abused his discretion by failing to abide by the heightened plea inquiry requirements under *United States v. Hartman*, 69 M.J. 467 (C.A.A.F. 2011). For the reasons set forth below, we conclude that the military judge did abuse his discretion.

---

[1] The actual granted issues were:

> I. Whether a guilty plea to an offense waives a challenge that the conduct is not a cognizable offense under the Uniform Code of Military Justice.

> II. Whether, in this case, internet search queries for "drugged sleep" and "rape sleep" are indecent conduct; in the alternative, whether the military judge abused his discretion by failing to abide by the heightened plea inquiry requirements under *United States v. Hartman,* 69 M.J. 467 (C.A.A.F. 2011).

Because of our resolution of this issue, we need not address the remaining issues.

## I. Background

The relevant charge in this case stemmed from Appellant's sexual abuse of his twelve-year-old stepdaughter, AK, which unfolded over an approximately two-year period starting in 2018. The abuse usually took place late at night in the living room or AK's bedroom. At first, Appellant would wait until AK started falling asleep and then massage her on the leg, the upper thigh, and the buttocks area. Eventually the massages migrated to her genital area, both over and under her clothing. AK was taking medication that could cause hallucinations and Appellant would flash lights and pound on the walls late at night to exacerbate this side effect. Appellant also began setting up his cell phone to film AK in the shower. He then edited these clips into sexually explicit videos he stored on his phone. In addition, in early 2019, Appellant conducted multiple searches on a pornographic website using the terms "rape sleep" and "drugged sleep" because watching such videos reminded him of abusing AK. In April 2019, AK reported Appellant's actions to law enforcement.

Appellant pled guilty to four specifications of sexual abuse of a child and several other offenses including one specification of indecent conduct by searching for the pornographic videos. The specification stated that Appellant "did . . . commit indecent conduct, to wit: conducting an internet search for 'rape sleep' and 'drugged sleep,' and that said conduct was of a nature to bring discredit upon the armed forces." During the plea colloquy, Appellant told the military judge that he sought out videos "depicting simulated vulgar sex scenes involving sleep or sex with an individual that was pretending to be asleep" and that watching the videos reminded him of sexually abusing AK. The colloquy of the military judge on this offense is at issue.

## II. Discussion

We review a military judge's decision to accept a guilty plea for an abuse of discretion and questions of law arising

from the guilty plea de novo. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008). "During a guilty plea inquiry the military judge is charged with determining whether there is an adequate basis in law and fact to support the plea before accepting it." *Id.* at 321-22 (citing *United States v. Prater,* 32 M.J. 433, 436 (C.M.A. 1991)). A military judge abuses his or her discretion by "fail[ing] to obtain from the accused an adequate factual basis to support the plea—an area in which we afford significant deference" or if his or her ruling is based on an erroneous view of the law. *Id.* at 322.

We give the military judge broad discretion in the decision to accept a guilty plea because the facts are undeveloped in such cases. *Id.* In reviewing the military judge's decision, this Court applies a substantial basis test: "Does the record as a whole show a substantial basis in law and fact for questioning the guilty plea." *Id.* (internal quotation marks omitted) (quoting *Prater*, 32 M.J. at 436). "[B]ecause a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." *United States v. Care*, 18 C.M.A. 535, 539, 40 C.M.R. 247, 251 (1969) (quoting *McCarthy v. United States*, 394 U.S. 459, 466 (1969)).

The First Amendment to the United States Constitution states that, "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. Though servicemembers are not excluded from First Amendment protection, it is important to remember that:

> the different character of the military community and of the military mission requires a different application of those protections. The fundamental necessity for obedience, and the consequent necessity for imposition of discipline, may render permissible within the military that which would be constitutionally impermissible outside it.

*Parker v. Levy*, 417 U.S. 733, 758 (1974).

"When a charge against a servicemember may implicate both criminal and constitutionally protected conduct, the

distinction between what is permitted and what is prohibited constitutes a matter of critical significance." *Hartman*, 69 M.J. at 468 (internal quotation marks omitted) (quoting *United States v. O'Connor*, 58 M.J. 450, 453 (C.A.A.F. 2003)). In a guilty plea situation, "the colloquy between the military judge and an accused must contain an appropriate discussion and acknowledgment on the part of the accused of the critical distinction between permissible and prohibited behavior." *Id.* "The fundamental requirement of plea inquiry . . . involves a dialogue in which the military judge poses questions about the nature of the offense and the accused provides answers that describe his personal understanding of the criminality of his or her conduct." *Id.* at 469.

In *Hartman*, this Court was troubled by the fact that the military judge failed to ask the appellant whether he understood the relationship between certain sections of the colloquy and the distinction between constitutionally protected behavior and criminal conduct. *Id.* We determined that "[i]n the absence of a dialogue employing lay terminology to establish an understanding by the accused as to the relationship between the supplemental questions and the issue of criminality, we cannot view [an appellant's] plea as provident." *Id.*

*Hartman* involved a conviction for sodomy under Article 125, UCMJ, 10 U.S.C. § 925 (2006). 69 M.J. at 467. As such, it implicated the Supreme Court's decision in *Lawrence v. Texas,* 539 U.S. 558 (2003), protecting consensual sodomy in the privacy of one's own home. The First Amendment right implicated in the present case was established by the Supreme Court in *Stanley v. Georgia*, 394 U.S. 557 (1969). In that case, investigators acting upon a search warrant for evidence of illegal bookkeeping seized three reels of eight-millimeter film they deemed obscene. *Id.* at 558. The appellant challenged his conviction for possession of obscene matter, asserting his First Amendment rights had been violated. *Id.* at 559. The Supreme Court agreed, stating that "the mere private possession of obscene matter cannot constitutionally be made a crime." *Id.* The Court upheld a constitutional right "to be free, except in very limited

circumstances, from unwanted governmental intrusion into one's privacy." *Id.* at 564.

> If the First Amendment means anything, it means that a State has no business telling a man, sitting alone in his own house, what books he may read or what films he may watch. Our whole constitutional heritage rebels at the thought of giving government the power to control men's minds.

*Id.* at 565.

This constitutional right protected in *Stanley* does not automatically apply to servicemembers. Conduct that is constitutionally protected for civilians could still qualify as prejudicing good order and discipline or bringing discredit upon the military. *United States v. Moon*, 73 M.J. 382, 388 (C.A.A.F. 2014) (quoting *United States v. Barberi*, 71 M.J. 127, 131 (C.A.A.F. 2012)). However, images viewed for sexual gratification do not necessarily lose their First Amendment protection. *Id.* at 389. Appellant's behavior here occupies a constitutional gray area similar to that at issue in *Hartman.* As a result, the plea colloquy should have established why possibly constitutionally protected material could still be service discrediting in the military context. *See id.* (stating that "[w]ithout a proper explanation and understanding of the constitutional implications of the charge, [a]ppellant's admissions in his stipulation and during the colloquy regarding why he personally believed his conduct was service discrediting and prejudicial to good order and discipline do not satisfy *Hartman*.").[2]

Appellant argues that the military judge's examination of Appellant did not rise to the level of the detailed inquiry required under *Hartman* whenever there is the potential to criminalize constitutionally protected conduct. The Government counters that the military judge engaged in a detailed colloquy that included a thorough explanation of the charges and demonstrated Appellant's understanding of

---

[2] *Moon* involved an appellant charged with possession of images of nude minors. 73 M.J. at 383.

the criminality of his actions, and that this was sufficient to meet the heightened standard required by *Hartman*.

The record shows that the military judge conducted a thorough plea colloquy with regard to the elements of the offense. He stated the elements and definitions relevant to the charged offense and questioned Appellant in detail about his behavior. Appellant was clear about the nature of the videos he searched for and watched and about why he watched them, as well as the service discrediting nature of his actions. The military judge explored Appellant's motivation in searching for and viewing pornographic videos related to the terms "rape sleep" and "drugged sleep." Appellant confirmed with the military judge the connection between the videos and abusing his stepdaughter. Appellant appeared to understand why his conduct was criminal. *See Care*, 18 C.M.A. at 541, 40 C.M.R. at 253.

However, the military judge did not discuss Appellant's First Amendment rights or any of the constitutional implications of his situation. In *Hartman*, this Court set aside a guilty plea because the military judge failed to discuss with the appellant the relevant distinction between constitutionally protected behavior and criminal conduct. 69 M.J. at 469. If we adhere to the heightened standard outlined in *Hartman*, the military judge should have discussed with Appellant the existence of constitutional rights relevant to his situation and made sure Appellant understood why his behavior under the circumstances did not merit such protection.

Given our decision in *Hartman*, we cannot view this plea colloquy as sufficient. We have been clear that the colloquy between the military judge and an accused "*must* contain an appropriate discussion and acknowledgment on the part of the accused of the critical distinction between permissible and prohibited behavior." *Id.* at 468 (emphasis added). In *Moon*, we further clarified that such discussion is required in situations where an Article 134, UCMJ, charge implicates constitutionally protected conduct. 73 M.J. at 388. Because such a discussion did not occur here, there is a substantial basis in law for questioning the plea.

We therefore conclude that the military judge abused his discretion and that Appellant's guilty plea to the charge of indecent conduct was improvident.

### III. Decision

The decision of the United States Army Court of Criminal Appeals is reversed as to Charge VI and its specification and the sentence, but affirmed in all other respects. The findings of guilty with respect to this charge and specification are set aside, and Charge VI and its specification are dismissed without prejudice. The decision is affirmed as to the remaining findings. The case is returned to the Judge Advocate General of the Army for remand to that court for reassessment of the sentence.