**UNITED STATES, Appellee**

v.

**Jimmy E. LITTLE, Jr., Airman Recruit U.S. Navy, Appellant.**

No. 95–0174.
CMR No. 94 0211.

U.S. Court of Appeals for the Armed Forces.

Argued Aug. 3, 1995.

Decided Sept. 27, 1995.

1. *See* 41 MJ 213, 229 n. * (1994).

2. We heard oral argument in this case at the United States Naval Training Center, Great Lakes, Illinois, on August 3, 1995, without objec-

For Appellant: *Lieutenant Kathryn L. Clune,* JAGC, USNR (argued); *Lieutenant William M. Schrier,* JAGC, USNR (on brief).

For Appellee: *Lieutenant David M. Harrison,* JAGC, USNR (argued); *Colonel J. Composto,* USMC, *and Commander S.A. Stallings,* JAGC, USN (on brief); *Commander David H. Myers,* JAGC, USN.

*Opinion of the Court*

SULLIVAN, Chief Judge:

1. Appellant was tried by a special court-martial military judge sitting alone at Naval Station, Treasure Island, San Francisco, California, on September 9, 1993. Pursuant to his pleas, he was found guilty of violating a lawful general regulation by wrongfully possessing a knife on board ship and aggravated assault, in violation of Articles 92 and 128, Uniform Code of Military Justice, 10 USC §§ 892 and 928, respectively. He was sentenced to a bad-conduct discharge, as well as confinement and forfeiture of $500.00 pay per month for 3 months. The convening authority approved the sentence on December 10, 1993. The Court of Military Review[1] affirmed on September 21, 1994.

2. On February 2, 1995, this Court granted review[2] on a question of law raised by appellate defense counsel, which asked:

tion from the parties involved. *See* Foundation of the Federal Bar Association, *Equal Justice Under the Law: The Supreme Court in American Life* 15–18 (1965); *see also* D. O'Brien, *Storm Center: The Supreme Court in American Politics*

WHETHER APPELLANT'S GUILTY PLEA TO THE SOLE SPECIFICATION UNDER CHARGE I WAS IMPROVIDENT BECAUSE APPELLANT'S POSSESSION OF THE KNIFE WAS AUTHORIZED.

We hold that the record of trial raises a substantial unresolved question of law and fact as to the providence of appellant's guilty pleas to violating the regulation by unauthorized possession of a dangerous weapon, and the findings of guilty based on those pleas must be set aside. *See United States v. Shackelford,* 2 MJ 17 (CMA 1976). *Cf. United States v. Schmidt,* 1 MJ 1 (CMA 1975)(no substantial question as to law or fact presented).

3. Appellant was charged with the following two offenses:

Charge I: Violation of the UCMJ, Article 92.

Specification: In that [appellant], on active duty, did, on board USS CARL VINSON (CVN–70), on or about 14 July 1993, violate a lawful general regulation, to wit: Article 1159, U.S. Navy Regulations, 1990, by wrongfully possessing a dangerous weapon, to wit[:] a knife, on board a naval vessel.

Charge II: Violation of the UCMJ, Article 128.[3]

Specification: In that [appellant] on active duty, did, on board USS CARL VINSON (CVN–70), on or about 14 July 1993, commit an assault upon Airman Apprentice Hubert L. Butcher, U.S Navy, by striking out at him with a means likely to produce death or grievous bodily harm upon him, to wit[:] a knife.

4. The court below summarized the facts concerning these offenses as follows:

During the providence inquiry, the appellant admitted to striking at the victim with a dangerous weapon, a knife with a 3-inch blade. The assault occurred at or about 2200 [hours] in their berthing compartment aboard ship after a fight. Before the fight, the men were watching television and playing cards. After the fight, the appellant went to his locker about 30 feet away, got the knife, and returned about 10 minutes later and swung the knife at the victim. The appellant said he used the knife in the performance of his duties in the hangar bay of the aircraft carrier (e.g., to cut rope [sic]), but that he believed that his possession of the knife when he swung it at the victim was wrongful because he used the knife as a weapon. Record 15–20. The appellant's defense counsel told the judge that the type of knife used by the appellant was sold in the ship's store and that other crew members carried similar knives aboard ship. Record at 8. The appellant does not assert

78, 135–40 (2d ed. 1990). This procedure is similar to the well-established practice of the United States Court of Appeals for the Eighth Circuit which holds hearings at various law schools within its circuit. The United States Court of Appeals for the Armed Forces conducts a hearing such as this outside its permanent courthouse in Washington, D.C., as part of its "Project Outreach," a public awareness project which demonstrates not only the operation of a Federal appellate court but also the quality and effectiveness of the criminal justice system of our Armed Services and the Uniform Code of Military Justice (Arts. 1–146, 10 USC §§ 801–946, respectively). It is hoped that the thousands of students, servicemembers, military and civilian attorneys, and members of the American public who witness these hearings will realize that America is a democracy that can maintain an Armed Force instilled with the appropriate discipline to make it a world power and yet afford the members of that Armed Force a fair and impartial justice system which does provide the full protection of the Constitution of the United States and Federal law to its members.

3. § 928. Art. 128. Assault
(a) Any person subject to this chapter who attempts or offers with unlawful force or violence to do bodily harm to another person, whether or not the attempt or offer is consummated, is guilty of assault and shall be punished as a court-martial may direct.
(b) *Any person subject to this chapter who—*
(1) *commits an assault with* a dangerous weapon or *other means or force likely to produce death or grievous bodily harm;* or
(2) commits an assault and intentionally inflicts grievous bodily harm with or without a weapon;
*is guilty of aggravated assault* and shall be punished as a court-martial may direct.
(Emphasis added.)

that the knife was issued to him by the Navy.

Unpub. op. at 1–2.

— — —

5. As a starting point, we note that appellant pleaded guilty to violating a lawful general regulation by having unauthorized possession of a dangerous weapon on a naval vessel. The violated regulation, Article 1159, U.S. Navy Regulations, provides:

1159. Possession of Weapons.

Except as may be necessary to the proper performance of his or her duty or as may be authorized by proper authority, no person in the naval service shall:

a. have concealed about his or her person any dangerous weapon, instrument or device, or any highly explosive article or compound; or

b. *have in his or her possession any dangerous weapon, instrument or device or any highly explosive article or compound on board any ship,* craft, aircraft, or in any vehicle of the naval service or within any base or other place under naval jurisdiction.

(Emphasis added.)

6. However, during his guilty-plea inquiry, appellant asserted that his possession of the work knife in question was authorized. The record states:

MJ: And did you violate that regulation?
ACCUSED: Yes, sir.
MJ: And how did you do that?
ACCUSED: *By using a knife to assault Airman Butcher, sir.*
MJ: Did you think you had authority from anyone in position to give you the authority to use the knife the way you did?
ACCUSED: No, sir.
MJ: Was the knife in question necessary for the proper performance of your duty?
ACCUSED: Meaning in my job, sir?
MJ: Right.
ACCUSED: No, sir. I used it sometimes, sir. Yes, sir.
MJ: So, how do you believe—in the performance of your normal duties, you used this knife, is that correct?

ACCUSED: Yes, sir, it's a work knife, sir.
MJ: So, how do you think—well, why was this improper then?
ACCUSED: Because I used it for not [sic] work, sir.
MJ: And at the time you did that, did you know that—
ACCUSED: Yes, sir.
MJ: —it wasn't authorized to be used that way?
ACCUSED: Yes, sir.
MJ: *Was it authorized to be in your possession?*
ACCUSED: *Yes, sir.*

(Emphasis added.)

7. After a short recess, the military judge continued to question appellant but he persisted in his claim that only his use of the knife was unauthorized. The record states:

We were discussing—Airman Recruit Little, we were discussing the specification under Charge I and the issue of your possession of this knife.

Could you describe the knife to me.

ACCUSED: It was about this long—
MJ: For your information, the—the record of trial merely indicates what is said, so that if you're indicating, you know, four inches, five inches, if you'd say that so that we can get it on the record.
ACCUSED: It was about four and a half inches, sir. It was a work knife like—I think he might have one on his belt loop.
MJ: How long is the blade, about three inches?
ACCUSED: Yes, sir.
MJ: Three inch blade. What are you supposed to do with it?
ACCUSED: Well, we usually cut rope and I work in the hanger bay on the aircraft carrier. We just cut rope when we're tying stuff down. That's basically what we use it for, sir.
MJ: Okay.
*And you were authorized, when doing your job, to have that knife, right?*
ACCUSED: *As far as I knew, sir. I don't know for sure, sir. Mostly everybody that I work with has one.*
MJ: *Okay, so for doing your work?*

ACCUSED: *Yes, sir.*

MJ: Okay.

Specifically, as to the charge, have you looked at it?

ACCUSED: Yes, sir.

MJ: It says you were wrongfully possessing a dangerous weapon, that is this knife. *In your own words, how was your possession wrongful on the 14th of July 1993?*

ACCUSED: *It was wrongful for me using it as a weapon.*

MJ: *Okay.*

*So, you had possession of it, but you used it for something that was absolutely unauthorized? Is that correct?*

ACCUSED: *Yes, sir.*

MJ: And at the time you knew that?

ACCUSED: Yes, sir.

MJ: Well, do you believe and admit that your possession at the time, on the 14th of July 1993, was wrongful?

ACCUSED: Yes, sir.

MJ: And it was wrongful because the way you used the weapon, correct?

ACCUSED: Yes, sir.

MJ: Do you believe that U.S. Navy Regulations, Article 1159, 1990, is a lawful regulation?

ACCUSED: Yes, sir.

MJ: Do you believe that the regulation is reasonably necessary to safeguard and protect the moral[e], discipline, and usefulness of the command?

ACCUSED: Yes, sir.

MJ: *And do you believe and admit that on the 14th of July, the manner in which you had possession of that knife with the* three and a half inch—or three inch blade, violated the regulation?

ACCUSED: Yes, sir.

MJ: *Did you think anybody gave you authority or permission to use the knife in that way?*

ACCUSED: *No, sir.*

MJ: Okay.

(Emphasis added.)

———

8. Article 45, UCMJ, 10 USC § 845, provides:

**845. Art. 45. Pleas of the accused**

(a) If an accused after arraignment makes an irregular pleading, or after a plea of guilty sets up matter inconsistent with the plea, or if it appears that he has entered the plea of guilty improvidently or through lack of understanding of its meaning and effect, or if he fails or refuses to plead, a plea of not guilty shall be entered in the record, and the court shall proceed as though he had pleaded not guilty.

We have construed this provision to require guilty pleas to be set aside on appeal where a "substantial" question as to the validity of the pleas appears unresolved on the record. *See United States v. Prater*, 32 MJ 433, 436 (CMA 1991). Here, the record reflects appellant's persistent belief that his possession of his work knife was authorized but his use of it to assault his shipmate was not. Moreover, this contraband type of regulation requires a particular showing of unauthorized possession, a regulatory concept distinct from use.[4] *See United States v. Smith*, 8 USCMA 400, 24 CMR 210, (1957); *United States v. Palmer*, 41 MJ 747 (N.M.Ct.Crim.

---

**4.** Assuming an admission of use alone is sufficient as a matter of law to violate this regulation, a different problem arises. It is clear from the record before us that appellant's use of the knife to assault his shipmate Butcher was the same conduct that rendered his possession of the knife *unauthorized* and in violation of Article 1159, Naval Regulations. *See also United States v. Bluel*, 10 USCMA 67, 68, 27 CMR 141, 142 (1958) (a straight razor may be a weapon if used for that purpose in a particular case). In this context, the reasoning of the Supreme Court in *Ball v. United States*, 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985), might be applicable. There, it said:

Applying this rule [*Blockburger*] to the firearms statutes, it is clear that Congress did not intend to subject felons to two convictions; proof of illegal receipt of a firearm *necessarily* includes proof of illegal possession of that weapon. "[W]hen received, a firearm is necessarily possessed." *United States v. Martin*, 732 F.2d 591, 592 (C.A.7 1984). In other words, Congress seems clearly to have recognized that a felon who receives a firearm must also possess it, and thus had no intention of subjecting that person to two convictions for the same criminal act.

470 U.S. at 862, 105 S.Ct. at 1672 (footnote omitted).

App.1994). *See generally United States v. Collins,* 50 CMR 64 (NCMR 1974) (applying a strict rule of construction to similar regulation). Accordingly, appellant's statements were inconsistent with his guilty pleas to this unauthorized possession offense, and the findings of guilty based on those pleas must be set aside. *See United States v. Shackelford,* 2 MJ at 18 (accused believed major portion of his absence was authorized). We are satisfied that our action requires no relief as to sentence.

The decision of the United States Navy–Marine Corps Court of Military Review is reversed as to Charge I and its specification. The findings of guilty as to that Charge and specification are set aside, and that charge and specification are dismissed. In all other respects the decision below is affirmed.

Judges COX, CRAWFORD, and WISS concur.

GIERKE, Judge (concurring in part and in the result):

9. I agree with the majority's resolution of the granted issue. In my view, the regulation makes certain items contraband, the possession of which is *per se* illegal. Appellant's responses to the military judge's questions were inconsistent with his work knife being contraband.

10. I write separately to dissociate myself from the suggestion in footnote 2 that the reasoning in *Ball v. United States,* 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985), might be applicable to this case. The *Ball* decision was based on the Supreme Court's analysis of the legislative history of the particular statutes in question. Furthermore, the *Ball* decision involved two statutory possessory offenses, a situation not involved in this case.