**UNITED STATES, Appellee,**

v.

**John W. BICKLEY, Private First Class, U.S. Army, Appellant.**

No. 98–0036.
Crim.App. No. 9601806.

U.S. Court of Appeals for the Armed Forces.

Argued Dec. 2, 1998.

Decided April 7, 1999.

Sullivan, J., filed dissenting opinion.

CRAWFORD, J., delivered the opinion of the Court, in which COX, C.J., and GIERKE and EFFRON, JJ., joined. SULLIVAN, J., filed dissenting opinion.

For Appellant: *Captain Thomas J. Barrett* (argued); *Colonel John T. Phelps II, Lieutenant Colonel Adele H. Odegard,* and *Major Leslie A. Nepper* (on brief).

For Appellee: *Captain Daniel G. Brookhart* (argued); *Colonel Russell S. Estey, Lieutenant Colonel Eugene R. Milhizer,* and *Major Patricia A. Ham* (on brief).

Judge CRAWFORD delivered the opinion of the Court.

Pursuant to his pleas, appellant was convicted of one specification each of assault with a dangerous weapon and violation of a lawful general regulation, in violation of Articles 128 and 92, Uniform Code of Military Justice, 10 USC §§ 928 and 892, respectively. The convening authority approved the sentence of a bad-conduct discharge, eight months' confinement, total forfeitures, and reduction to the lowest enlisted grade. The

Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion.

We granted review of the following issue: WHETHER THE MILITARY JUDGE COMMITTED PLAIN ERROR WHEN HE FAILED TO INQUIRE INTO THE MISTAKE OF LAW DEFENSE THAT WAS CLEARLY RAISED BY THE FACTS CONCERNING CHARGE I AND ITS SPECIFICATION (VIOLATION OF A LAWFUL GENERAL REGULATION).

We hold that appellant's plea was provident.

## FACTS

During an inspection held on June 18, 1996, a .22 caliber rifle was found in appellant's barracks room. Paragraph 2–4 of Fort Stewart Regulation 190–2 (27 October 1995), provides in pertinent part:

a. It is prohibited for any person, military or civilian, to possess or store ammunition [or] firearms ... in locations other than those locations specified in paragraph 3–1, except under conditions specified in paragraph 3–2. Prohibited locations for these items include, but are not limited to, *living spaces and common areas of billets,* squad rooms, privately owned vehicles, exterior storage sheds, camper trailers, and offices.

b. Commanders will designate an arms rooms [sic] and times for weapons turn-in. During periods when arms rooms are closed, the Staff Duty Officer (SDO) will ensure the weapon is secured in accordance with (IAW) this regulation.

(Emphasis added.)

During the factual inquiry into appellant's plea of guilty to violation of this regulation, appellant testified under oath that he had been storing the weapon at his girlfriend's residence, but she returned the weapon to him at 0130 hours on the morning of the inspection. He had placed the weapon in his locker intending to return it to the arms room when it opened at 0900 hours.

During sentencing, appellant testified: "I heard—I thought I heard prior to this that, you know, you had until 0900 in the morning to turn [the weapon] in, which I later read—

in one of the [Training Manuals] it had 72 hours [sic]."

No further statement was made concerning this testimony. However, as part of his post-trial clemency submission, appellant noted that his brief utterance during sentencing about this belief came from a commander's memorandum posted outside the arms room, which stated:

Personnel residing in troop billets may also possess such weapons/ammunition ... but they must be **stored in the unit arms room within 24 hours of** arrival in the unit or of **obtaining the weapon.** These weapons must be registered with the Hunter AAF Provost Marshal Office **within three normal working days.**

(Emphasis added.)

The defense contends once appellant merely mentioned his belief that he could hold the weapon until 0900 hours, or up to 72 hours, the judge had a *sua sponte* obligation to ensure that he had not raised the defense of mistake of law.

## DISCUSSION

 In examining the providence of a guilty plea, this Court has noted that "[t]he factual predicate is sufficiently established if 'the factual circumstances as revealed by the accused himself objectively support that plea....'" *United States v. Faircloth,* 45 MJ 172, 174 (1996), quoting *United States v. Davenport,* 9 MJ 364, 367 (CMA 1980). Furthermore, in *United States v. Prater,* 32 MJ 433, 436 (CMA 1991), this Court stated that "[t]he bottom line ... is that rejection of the plea requires that the record of trial show a 'substantial basis' in law and fact for questioning the guilty plea." Also, in *Faircloth,* this Court stated that "[w]e will not overturn a military judge's acceptance of a guilty plea on a 'mere possibility' of a defense." 45 MJ at 174.

 Appellant commented during sentencing that he "thought [he] heard prior to this" that weapons could be retained overnight until 0900 hours. However, appellant's vague and ambiguous musings do not provide a "'substantial basis' in law and fact for questioning the guilty plea." He fully and

freely admitted that his actions violated each of the elements of the offense charged. *See Prater, supra* at 436. At best, his comments present "a 'mere possibility' of a defense," upon which we will not overturn a finding of guilty.

In *Prater*, the appellant challenged the providency of his guilty plea in a false-official-statement case by attempting to show, post-trial, that the statement was not official. Judge Sullivan, in his opinion for the Court, emphasized that, where the argument on appeal "contradicts [the] appellant's trial admission of guilt to making a false official statement," and where, "because of these guilty pleas, the record of trial was not fully developed concerning the existence of any particular regulatory duty" on the appellant, "post-trial speculation on the question of the officiality of the statements is not appropriate." *Id.* at 437–38.*

The dissenting opinion relies extensively on speculation and on matters that were filed post-trial. The concerns noted in the dissent could have been taken into account had appellant raised them at trial and contested his guilt. He chose not to do so, and under *Prater*, it is not appropriate for him to do so on appeal.

---

*. Appellant has not argued on appeal that the commander's memorandum, quoted earlier, implemented the post regulation in such a manner that, as a matter of law, his actions did not violate the regulation. Instead, the granted issue is limited to reviewing the providency of his plea.

1. Appellant was charged with violating paragraph 2–4 of this regulation, which states:

 2–4. PROHIBITED POSSESSION AND STORAGE.
 a. *It is prohibited for any person, military or civilian, to possess or store ammunition, firearms, knives with blades more than three inches, bows and arrows, crossbows, and BB and pellet guns, in locations other than those locations specified in paragraph 3–1, except under conditions specified in paragraph 3–2.* Prohibited locations for these items include, but are not limited to, living spaces and common areas of billets, squad rooms, privately owned vehicles, exterior storage sheds, camper trailers, and offices.
 b. *Commanders will designate an arms rooms [sic] and times for weapons turn-in.* During periods when arms rooms are closed, the Staff Duty Officer (SDO) will ensure the weapon is secured in accordance with (IAW)

## DECISION

The decision of the United States Army Court of Criminal Appeals is affirmed.

SULLIVAN, Judge (dissenting):

At the very least, the facts of this case show a soldier who did not intentionally violate an exceptionally convoluted post regulation, *i.e.*, Fort Stewart Regulation 190–2 (27 October 1995).[1] Moreover, they also show a soldier who honestly and, in my view, reasonably believed that he was authorized by his battalion commander to keep the weapon (returned to him at 1:30 a.m.) in his locked barracks wall locker until the arms room opened at 9:00 a.m. *See United States v. Little*, 43 MJ 88, 91 (1995) (record reflects persistent belief that possession of work knife authorized). I strenuously disagree with the trial judge's suggestion that criminal liability can be "technical[ly]" imposed in these circumstances without regard for appellant's criminal intent or state of mind. *See United States v. Bruce*, 14 MJ 254 (CMA 1982); RCM 916(*l*)(1) and its Discussion, Manual for Courts–Martial, United States (1995 ed.).[2] Instead, I would hold that the

 this regulation. A receipt will be given for each weapon received, reflecting the weapon's make, serial number, identity of owner and other data deemed appropriate.
 (Emphasis added.)
 Paragraph 3–1 of this regulation has 11 subsections, and paragraph 3–2 has 7 subsections. Nowhere does it say that personnel in troop billets *must immediately* bring registered firearms in their possession to the SDO or the arms room, *if a different time and procedure is approved by their commander*. Moreover, a legitimate question exists whether a locked wall locker is a living space or common area of a billet within the meaning of this regulation.

2. Article 92(1), UCMJ, 10 USC § 892(1) (with its authorized punishment of 2 years' confinement and a dishonorable discharge, *see* para. 16e(1), Manual for Courts–Martial, United States (1995 ed.)), does not give military regulators carte blanche authority to create felony crimes without any criminal intent requirement. Such a holding would clearly violate the Constitution. *See Staples v. United States*, 511 U.S. 600, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994) (usual presumption is that defendant must know the facts that

military judge erred by failing to reject appellant's plea as required by this Court's decision in *United States v. Prater*, 32 MJ 433, 436 (CMA 1991)(rejection of guilty plea required where the record shows "a substantial basis in law and fact for questioning the guilty plea.")

Turning first to the record in this case, I conclude that it presents unique circumstances, suggesting negligence at best, which do not warrant a felony conviction for a federal weapons offense. Appellant stipulated at trial to the following:

> On 18 June 1996, a .22 caliber rifle and ammunition were found in the accused's barracks room during a health and welfare inspection. The accused accepted the weapon, from his girlfriend, the previous evening. The accused believed he could keep the weapon until the arms room opened at 0900 the next day.
>
> Possession of a firearm in the barracks is prohibited by paragraph 2–4 of Fort Stewart Regulation 190–2, which was in effect at the time of the offense. The regulation is punitive and was properly published under authority of the Commander, Fort Steward and Hunter Army Airfield. The regulation is lawful and enforceable under Article 92 of the Uniform Code of Military Justice.
>
> The accused is assigned barracks space on Hunter Army Airfield and had a duty to obey Fort Stewart Regulation 190–2 relating to possession of firearms.
>
> The .22 caliber rifle found in the barracks room was in the accused's custody, and was intentionally stored there by the accused.
>
> The accused and counsel agree that the facts set forth above meet the elements of failure to obey order or regulation under Article 92 of the Uniform Code of Military Justice.

The record also shows that appellant was a 22–year–old Ranger, with the rank of Private First Class, who was on active duty for less than 2 years on the day of the regulation's alleged violation. He further described this violation of the regulation as follows:

MJ: Tell me in your own words why you believe you are guilty of this offense.

AC: I had possessed a—by possessing a .22 caliber rifle in my personal barracks room, I violated the general order and having it not in the arms room. What happened, Your Honor, was, my girlfriend brought it to me the night prior—0130 in the morning, around that time, from her house. I was storing it—I kept it at her house. We were in the process of breaking up and she brought it to me after work—

MJ: Whose rifle was it?

AC: It was mine, Your Honor.

MJ: You used to store it at her house?

AC: Yes, Your Honor.

MJ: And you were breaking up and so she had just delivered it back to you?

AC: Yes, Your Honor. It was after work.

MJ: That same day?

AC: *1:30 in the morning.* She works at a bar. She's a waitress at a bar. She brought it to me. I went out and got it. The arms room didn't open up until 0900, so I left it in my room and had planned on putting it in the arms room at, you know, 0900 in the morning. We went to PT formation. They told us we had a health and welfare inspection, which is when they found the weapon, Your Honor. *I know now that I should have turned it in to the staff duty or the SDO on post.*

MJ: Okay. So, what you're telling me, basically, is, *this was really a technical violation. You didn't intend to violate the regulation. You knew that arms had to be stored in the, what, arms room?*

AC: *Yes, Your Honor.*

MJ: And you intended to turn it into the armorer the next day, but you didn't think

make his conduct illegal). The required criminal intent in this case depends upon the language of the regulation and a rather sophisticated analysis of its meaning, which has not yet been conducted. *Id.; see also United States v. Bruce*, 14 MJ 254, 258 (CMA 1982) (knowledge requirement found despite absence of express language in regulation requiring knowledge). I need not decide that question in this case because RCM 916(*l*)(1) and its Discussion, Manual, *supra*, provide an independent legal basis for setting aside this plea.

to check it in with the CQ or someone else. You said, staff duty officer ... ?

AC: Yes, Your Honor.

MJ: That would be the proper procedure, you think?

AC: Yes, Your Honor.

MJ: *You found that out after the fact?*

AC: *Yes, Your Honor.*

MJ: *Does the government have any evidence to the contrary on that?*

TC: *No, Your Honor.*

MJ: And your barracks room is at Hunter Army Airfield. Is that correct?

AC: Yes, Your Honor.

MJ: And you are a member of, what is it, A Company, 1st of the 75th Ranger Regiment?

AC: Yes, Your Honor.

MJ: And you were a member of that unit at the time of this offense?

AC: Yes, Your Honor.

\* \* \*

MJ: Okay. So, the elements over there remain the same. However, the command that issued this particular regulation has changed, so we will still need Appellate Exhibit II, I believe it is. The regulations of the 24th are adopted. This is also a punitive regulation.

Looking at the stipulation of fact, it states in paragraph 8 that you accepted this .22 caliber rifle from your girlfriend the previous evening and that you were holding it until the arms room opened. So, the government has stipulated to that fact.

Where did you store the rifle in your room?

AC: It was locked in my wall locker, Your Honor.

MJ: Locked in your wall locker?

AC: Yes, Your Honor.

(Empasis added.)

Appellant's final comments on his guilt of this offense occurred during his unsworn statement at sentencing:

Q. I want to talk about the weapon regulation for a second, PFC Bickley. When your girlfriend brought the weapon over at 1:30 in the morning, what was your intent at that moment with the weapon?

A. To turn it into the arms room at 0900 when it opened, sir.

Q. What were you thinking? Did you think you had 72 hours?

A. *Yes, sir, I did. I heard—I thought I heard prior to this that, you know, you had until 0900 in the morning to turn it in, which I later read—in one of the [Training Manuals] it had 72 hours [sic].*

Q. You understand what you did wrong?

A. Yes, sir.

Q. What should you have done not to have got into trouble with this regulation?

A. I should have turned it in to the Staff Duty, CQ, or ...

Q. And they could have held it overnight?

A. Yes, sir.

(Emphasis added.)

The pertinent question before this court is whether this factual record raises a substantial question in law requiring the rejection of appellant's guilty plea. RCM 916(*l*)(1) and its Discussion provide the required legal authority. They state:

(1) *Not defenses generally.*

(*l*) *Ignorance or mistake of law.* Ignorance or mistake of law including general orders or regulations, *ordinarily* is not a defense.

### Discussion

For example, ignorance that it is a crime to possess marijuana is not a defense to wrongful possession of marijuana.

*Ignorance or mistake of law may be a defense in some limited circumstances.* If the accused, because of a mistake as to a separate nonpenal law, lacks the criminal intent or state of mind necessary to establish guilt, this may be a defense. For example, if the accused, under mistaken belief that the accused is entitled to take an item under property law, takes an item, this mistake of law (as to the accused's legal right) would, if genuine, be a defense to larceny. On the other hand, if the accused disobeyed an order, under the actual but mistaken belief that the order was unlawful, this would not be a defense because the accused's mistake was as to the order itself, and not as to a separate

nonpenal law. *Also, mistake of law may be a defense when the mistake results from reliance on the decision or pronouncement of an authorized public official or agency.* For example, if an accused, acting on the advice of an official responsible for administering benefits that the accused is entitled to [ ], applies for and receives those benefits, the accused may have a defense even though the accused was not legally eligible for the benefits. On the other hand, reliance on the advice of counsel that a certain course of conduct is legal is not, of itself, a defense.

(Emphasis added.) Here, appellant's asserted reliance on command pronouncements as to the proper procedure to follow in these circumstances raised a legal defense. *See United States v. Little, supra.* Moreover, the post-trial submissions in this case show that additional inquiry and investigation by the trial judge would have disclosed the battalion commander's actual memorandum supporting this defense. *See United States v. Outhier,* 45 MJ 326, 332 (1996) (mere recitations of a conclusion of law by accused should not preclude appropriate inquiry by trial judge).

This Ranger Battalion Memorandum clearly states:

3. *Military Requirements:*

a. 24th ID & FS Reg 190–2 grants permission for personnel assigned to Hunter AAF to possess privately owned firearms, ammunition, BB and pellet guns, knives, bows and arrows, and crossbows except for those specifically prohibited items as listed in Chapter 3 (Incl 1).

b. Personnel residing in family housing, BOQ, BEQ/VOQ and guest housing may store such weapons in their quarters but they must be registered with the HAAF Provost Marshal Office within three normal working days after arrival on the installation or after obtaining the weapon.

c. *Personnel residing in troop billets may also possess such weapons/ammunition as described in paragraph A, but they must be stored in the unit arms room within 24 hours of arrival in the unit or of obtaining the weapon.* These weapons must then be registered with the Hunter AAF Provost Marshal Office within three normal working days.

(Emphasis added.)

Perhaps a detached and experienced regulatory specialist in the cold light of day might be able to understand or reconcile the conflict between the post regulation and the Ranger battalion memorandum in this case.[3] However, I question whether we should apply such a high standard of notice and regulatory understanding to a warrior, comfortable with weapons and their security, who was abruptly awakened in the middle of the night. I am concerned with the fairness of such a presumption, and with the sufficiency of notice required by the Constitution for a criminal conviction. *See generally United States v. Tolkach,* 14 MJ 239, 243 (CMA 1982); *United States v. Curtin,* 9 USCMA 427, 432–433, 26 CMR 207, 212–13 (1958).

I would set aside the finding of guilty to violating a lawful general regulation and order a new trial of this charge and specification.

---

3. Apparently, the Commander of the Ranger Battalion could not accomplish this feat of regulatory construction. Defense counsel, in his post-trial clemency submission, stated:

Four weeks ago, 16 rangers from PFC Bickley's company were given Field Grade Article 15's for violating FS reg 190–2. One of these soldiers was the armorer, who provided me a copy of a Ranger Battalion Policy Memoran-

dum attached to the arms room door.... Simply put, a plain reading of this memorandum suggested that PFC Bickley had 24 hours to store his weapon in the arms room. (For the record, this memorandum was in effect up until three weeks ago. After being brought to the Ranger Battalion Commander's attention, he immediately revoked this policy memorandum, and updated it with one consistent with FS reg 190–2).