*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————

**UNITED STATES**
Appellee

**v.**

**Nhubu C. CHIKAKA, Staff Sergeant**
United States Marine Corps, Appellant

**No. 16-0586**
Crim. App. No. 201400251

Argued May 23, 2017—Decided June 20, 2017

Military Judge: David M. Jones

For Appellant: *Lieutenant Doug Ottenwess*, JAGC, USN (argued); *Major M. Brian Magee*, USMC.

For Appellee: *Lieutenant Commander Jeremy R. Brooks*, JAGC, USN (argued); *Lieutenant Robert J. Miller*, JAGC, USN, and *Brian K. Keller*, Esq. (on brief); *Captain Cory A. Carver*, USMC.

Judge OHLSON delivered the opinion of the Court, in which Chief Judge ERDMANN, Judges STUCKY and SPARKS, and Senior Judge COX, joined.

———————

Judge OHLSON delivered the opinion of the Court.

We granted review to determine whether the lower court erred in concluding that Appellant's claim of unlawful command influence (UCI) was "without merit."[1] *United States v. Chikaka*, 76 M.J. 40, 41 (C.A.A.F. 2016). For the reasons set forth below, we hold that Appellant presented sufficient evidence of UCI during the sentencing phase of his court-martial to cause the burden to shift to the Government to disprove UCI beyond a reasonable doubt. Accordingly, the decision of the United States Navy-Marine Corps Court of Criminal Appeals (CCA) is affirmed as to the findings but reversed as to the sentence.

———————

[1] *United States v. Chikaka*, No. NMCCA 201400251, 2016 CCA LEXIS 223, at *39 n.40, 2016 WL 1456741, at *13 n.40 (N-M. Ct. Crim. App. Apr. 12, 2016).

## I. Background

During the spring and summer of 2012, Appellant was a married recruiter in the Sixth Marine Corps District. The evidence adduced at trial demonstrated that Appellant engaged in inappropriate conduct with four female poolees[2] during this time period, and that he continued his misconduct with one poolee into 2013. This misconduct with the four poolees "included his sending thousands of inappropriate electronic communications, engaging in unwanted sexual activity with two of the four [poolees], and plying a third [poolee] with alcohol and commencing an adulterous relationship with her." *Chikaka*, 2016 CCA LEXIS 223, at *4, 2016 WL 1456741, at *2.

Appellant's wrongdoing resulted in a trial before a general court-martial composed of officer and enlisted members. He was convicted, contrary to his pleas, of one specification of attempted abusive sexual contact, nine specifications of violating a general order, one specification of wrongful sexual contact, one specification of abusive sexual contact, one specification of adultery, one specification of indecent language, and four specifications of obstruction of justice, in violation of Articles 80, 92, 120, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 892, 920, 934 (2006 & 2012).

During the sentencing phase of the court-martial, the military judge admitted two pieces of evidence relevant to the issue before us. First, the military judge admitted a photograph of the Commandant of the Marine Corps shaking hands with one victim's great grandfather who was receiving the Congressional Gold Medal. Second, the military judge permitted Appellant's commanding officer to testify as follows when trial counsel asked him to explain "how important it is to set a strong example for general deterrence in [the Sixth] Marine Corps District as a whole":

> And I would say [it] … goes beyond that, beyond recruiting, but … if you haven't been a recruiter -- I know I can see by the experience you have, you've been around it. You've worked with recruiters. You understand that. One of you may be a recruiter. If

---

[2] A poolee is an individual who has enlisted in the Marine Corps but has not yet reported for basic training.

you -- if this type of thing, any type of misconduct,
fraudulent enlistment, some kind of crime out in
town, driving under the influence, those are all bad.
But if you have something that completely goes
against what we stand for, preys upon a weaker
group of people, younger, they're less experienced;
in many cases, they're juveniles, 17. You can con-
sider 18 an adult. Sometimes they don't act that
way. And it goes -- and we say, "Hey, if we're just
going to treat that lightly." So you're going to get,
you know, there's maybe … a precedent set that it's
somewhat on par with someone that gets a DUI or
that didn't listen when a parent said, "Well, he did
have surgery when he was 12." "Well, I don't know
if I want to bring that up because I'm afraid this
kid won't be able to join." To me there's no parallel
there.

So it needs to be something that says, "If you do
this, everything around you, generally speaking, is
going to stop." And Marines that are potentially in
a vulnerable window -- for whatever reason -- that
might be predisposed to go this way, would see that
as a deterrent and say that, "There's no middle
ground. There's no way to negotiate out of this.
There's no way to lessen the blow. It's a significant
blow. It's something I do not want to have happen
to me."

Trial counsel then argued for a sentence of confinement
for ten years. (The maximum sentence of confinement for
Appellant's offenses was thirty-six years and six months.) In
seeking this sentence, trial counsel referenced both the
Commandant's photograph and the commanding officer's
testimony:

[The victim] couldn't look her great-grandfather in
the eye at the same time he's receiving a Congres-
sional Gold Medal by our Commandant and say,
"Hey, this is what's happening to me. This is my
experience in the United States Marine Corps."

….

… General deterrence is a big issue, and we want
to talk about everything [the commanding officer]
talked about, … the need to send a strong message
inside the Marine Corps, not just to the high
schools and the community, but for all the can-
vas[s]ing recruiters out there right now that might

> be teetering, that might be having a difficult home situation, difficult marriage, that are thinking, "Here's a high school kid, poolee." They're working 80-hour work weeks. We need a strong message that … this misconduct will not be tolerated. This is different. This is not misusing the GOV, misusing the government cell. This is sexual assault, attempted sexual assault of another poolee, adultery with another poolee, indecent language with another poolee over years.

The members sentenced Appellant to confinement for twelve years, a reduction to the pay grade of E-1, forfeiture of all pay and allowances, and a dishonorable discharge.

The convening authority approved the sentence, but the CCA set aside this action and afforded Appellant the opportunity to submit clemency materials. On remand, the convening authority approved a sentence of confinement for ten years and the remaining adjudged sentence.

In Appellant's subsequent appeal, the CCA held, in relevant part, that the military judge did not abuse his discretion in admitting the Commandant's photograph. *Chikaka*, 2016 CCA LEXIS 223, at *28–30, 2016 WL 1456741, at *10. Further, the CCA more generally held that Appellant's claim of unlawful command influence was "without merit." *Id.* at *39 n.40, 2016 WL 1456741, at *13 n.40. However, the CCA also determined that the military judge erred in admitting two pieces of evidence, including the commanding officer's presentencing testimony, albeit on evidentiary grounds rather than on UCI grounds. *Id.* at *30–39, 2016 WL 1456741, at *11–13. The CCA also concluded that three obstruction of justice specifications constituted an unreasonable multiplication of charges, consolidated these specifications, and affirmed the findings as to the consolidated specification and the remaining specifications and charges. *Id.* at *14–15, 2016 WL 1456741, at *5–6. "[T]o obviate the impact of these errors," the CCA reassessed Appellant's sentence and affirmed a sentence that included confinement of five years, a reduction to E-1, forfeiture of all pay and allowances, and a dishonorable discharge. *Id.* at *44–45, 2016 WL 1456741, at *15.

We then granted review of the following issue:

> Where the military judge admitted on the merits a campaign plan to "fully operationalize the Commandant's guidance" from the Heritage Tour, and then during sentencing admitted a picture of the Commandant and allowed Appellant's commanding officer to testify that it was important for the members to adjudge a harsh sentence, did the lower court err in failing to find evidence of unlawful command influence sufficient to shift the burden to the Government to disprove unlawful command influence in this case?

*Chikaka*, 76 M.J. at 41.[3]

## II. Applicable Legal Principles

We review allegations of unlawful command influence de novo. *United States v. Salyer*, 72 M.J. 415, 423–24 (C.A.A.F. 2013). In conducting this review, we first must determine whether an appellant has met his or her initial burden of presenting "some evidence" of unlawful command influence. *See United States v. Boyce*, 76 M.J. 242, 249 (C.A.A.F. 2017). This "some evidence" standard is low, although an appellant must allege "more than mere allegation or speculation." *Salyer*, 72 M.J. at 423. Once an appellant has met this initial evidentiary burden, the burden shifts to the government to rebut the allegation of UCI beyond a reasonable doubt. *Id.*

## III. Discussion

In the instant case, Appellant argues that he established "some evidence" of unlawful command influence at both the findings and sentencing phases of his trial. Although we conclude that Appellant has failed to show "some evidence" of UCI during the findings portion of his court-martial,[4] we

---

[3] We also granted review to determine whether the military judge erred by instructing the members, "'[i]f, based on your consideration of the evidence, you are firmly convinced that the accused is guilty of the crime charged, you must find him guilty.'" *Chikaka,* 76 M.J. at 41. Because Appellant did not object to the instruction, we hold that the military judge did not plainly err in accordance with our decision in *United States v. McClour*, 76 M.J. 23 (C.A.A.F. 2017).

[4] The granted issue refers to "a campaign plan to 'fully operationalize the Commandant's guidance' from the Heritage Tour" as

reach a different conclusion, as demonstrated below, with respect to the sentencing phase of his trial.

In *United States v. Ohrt*, we indicated that the use of "a commanding officer before a court-martial … to *influence* the court members into returning a particular sentence" implicates unlawful command influence. 28 M.J. 301, 303 (C.M.A. 1989). Specifically, we stated: "The question of appropriateness of punishment is one which must be decided by the court-martial; it cannot be usurped by a witness." *Id.* at 305. Similarly, in *United States v. Cherry*, we held that "a commander's opinion as to an appropriate punishment …. invade[s] the province of the court-martial and constitute[s] unlawful command influence." 31 M.J. 1, 5 (C.M.A. 1990) (citations omitted). And yet, despite this long-standing precedent, Appellant's commanding officer, who outranked the entire panel and was within the chain of command of at least one member, was permitted to testify at some length about the importance of a harsh sentence being imposed by the court-martial. We conclude that this testimony constituted "some evidence" of unlawful command influence.[5]

The Government argues that the CCA's sentence reassessment remedied any unlawful command influence in Appellant's case. However, the CCA did not grant relief on the basis of unlawful command influence. Instead, the CCA re-

---

evidence of unlawful command influence. Similarly, Appellant cites this "campaign plan" (i.e., the Sixth Marine Corps District's Operation Restore Vigilance Campaign Plan which addressed sexual assault within the Marine Corps) as a basis for establishing a claim of unlawful command influence. However, we conclude that the record before us does not contain "some evidence" that either the campaign plan or the underlying Heritage Tour caused unlawful command influence to occur in this particular case. Accordingly, we do not address this matter further.

[5] We also are concerned about the admission of the Commandant's photograph. It is unclear what legitimate purpose this photograph served, and it raises the specter of the Government improperly inserting the Commandant into the deliberation room. In light of our conclusion concerning the presentencing testimony of Appellant's commanding officer, we need not decide whether the admission of the photograph constituted "some evidence" of unlawful command influence. We leave this issue for the CCA to evaluate on remand.

assessed Appellant's sentence because of evidentiary error and unreasonable multiplication of charges. Thus, the issue of unlawful command influence remains unresolved for purposes of sentencing. Accordingly, we remand in order for the CCA to determine whether, in light of our decision in *Boyce,* there was unlawful command influence at the sentencing stage of the instant case and, if so, whether any additional sentencing relief is warranted.

## IV. Decision

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed as to the findings but reversed as to the sentence. The record of trial is returned to the Judge Advocate General of the Navy for remand to that court for further proceedings consistent with this opinion.