# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

### Evan K. GOODELL
### Chief Machinery Technician (E-7), U.S. Coast Guard

### CGCMSP 24961
### Docket No. 1458

### 10 September 2018

| | |
|---|---|
| Military Judge: | LCDR Geralyn Van de Krol, USCG |
| Appellate Defense Counsel: | LCDR Benjamin M. Robinson, USCG |
| Appellate Government Counsel: | LCDR Stephen R. Miros, USCG |
| | Mr. Stephen P. McCleary, Esq. |

## BEFORE
## McCLELLAND, BRUBAKER & KOSHULSKY
Appellate Military Judges

BRUBAKER, Judge:

A military judge sitting as a special court-martial convicted Appellant, pursuant his pleas, of four specifications of failure to obey a lawful order, three specifications of false official statements, one specification of stalking, two specifications of extortion, two specifications of assault consummated by battery, and one specification of obstructing justice, in violation of Articles 92, 107, 120a, 127, 128, and 134, Uniform Code of Military Justice (UCMJ). The military judge adjudged a sentence of reduction to pay grade E-1, confinement for one year, and a bad-conduct discharge, which the Convening Authority approved. While there was a pretrial agreement, it had no impact on the sentence.

Before us, Appellant asserts that:

(1) He had no duty to obey the military protective orders (MPOs) that he pleaded guilty to violating because they lacked a military purpose and unjustifiably deprived him of personal rights; and

(2) A subsequent MPO issued after trial: (a) subjected him to unlawful punishment; (b) constituted unlawful command influence; and (c) denied him the benefit of his pretrial agreement by subjecting him to punishment beyond that agreed upon.[1]

We disagree and affirm.

## Background

When Appellant's wife, Machinery Technician First Class (MK1) LG, informed him she wanted a divorce, it "triggered anger" in him "and marked the beginning of a pattern of conduct that included [his] conveying threats to [his] wife, both verbally, and threats implied by [his] conduct." (Prosecution Ex. 1 at 6.) We need not belabor the stalking, extortion, assaults, and obstruction of justice that followed, for they are not at issue here. The asserted errors focus instead on a series of MPOs issued by Appellant's command, several of which gave rise to the specifications under Article 92.

The first order (MPO 1) prohibited Appellant from contacting MK1 LG and required he remain at least twenty feet away from her and members of her household, including their son, and from their residence and workplaces. Just over a week later, Appellant violated this order by entering his wife's home, where, besides gathering some belongings, he found a children's book about divorce, placed it in a sink, and soaked it with water. The command responded by issuing two new MPOs, one expanding the remain-away distance to 300 feet, the other expressly directing no contact with the couple's son.

After receiving MPOs 2 and 3, Appellant twice contacted local police to prompt them to respond to his wife's house, one of those times by fabricating an anonymous report of narcotics activity at the house. Appellant admitted that he did this intentionally to prompt third-party contact with his wife and son in knowing contravention of the MPOs. Upon learning of the MPOs, the local police department joined his command in advising Appellant not to contact anyone at his wife's residence, including through a third party.

---

[1] Appellant personally raised issues 2(a) and (c) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

As MPOs 2 and 3 were about to expire, the command served Appellant with MPO 4. It had essentially the same terms, except that it accounted for visitation of their son (which had, by that point, been permitted by temporary order of a local court). Appellant subsequently drove his truck past his wife's house several times in violation of the order, had a friend position himself to photograph his wife and anyone else at the house (leading to a confrontation), and operated a drone to observe and record his wife and anyone else at the house. The command then issued yet another MPO (#5) prohibiting Appellant from coming within one mile of his wife's residence. It again accounted for visitation of their son and permitted, as an exception to the no-contact rule, Appellant to contact his wife for purposes of communicating with their son or arranging visitation. Later, Appellant violated the order by traveling to the residence and attempting to gain entry. In the process of trying to get in, he tore off and damaged a screen from one of the windows. LG observed this through a security camera application on her smart phone and called law enforcement. Appellant was apprehended and placed in pretrial confinement.

After pleading guilty to, *inter alia*, violating MPOs 1–5, Appellant began to serve his sentence. Shortly before his scheduled release from confinement, Appellant's new command—the U.S. Coast Guard Pay and Personnel Center—issued Appellant a final MPO, which we will detail below.

## Lawfulness of Military Protective Orders

We first address the Government's argument that Appellant, by the combination of his unconditional guilty pleas and his express admission of the orders' lawfulness during the plea inquiry, waived this issue. The Government is only partly correct. By choosing to plead guilty unconditionally, Appellant indeed passed on his opportunity to challenge the MPOs and to litigate factual issues related to their lawfulness. *United States v. Jones*, 69 M.J. 294, 299 (C.A.A.F. 2011) ("An unconditional guilty plea generally waives all pretrial and trial defects that are not jurisdictional or a deprivation of due process of law."); Rule for Courts-Martial 910(j), Manual for Courts-Martial, United States (2016 ed.). As our predecessor Court has said, "[W]e will not require the Government to prove something now that was admitted by Appellant's guilty pleas at trial." *United States v. Heath*, 39 M.J. 1101, 1102 (C.G.C.M.R. 1994).

That said, we must be satisfied that Appellant's pleas were provident "based not only on [his] understanding and recitation of the factual history of the crime, but also on an understanding of how the law relates to those facts." *United States v. Moon*, 73 M.J. 382, 386 (C.A.A.F. 2014) (quoting *United States v. Medina*, 66 M.J. 21, 26 (C.A.A.F. 2008)). In this context, Appellant may raise, and we will consider, factual or legal matters that may impinge on the providence of his pleas. *See United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008). In short, Appellant does not start with a clean slate to complain about alleged infirmities with the orders he violated; we consider factual and legal issues he raises through a providence lens, not through a sufficiency of the evidence lens. *See United States v. Ferguson*, 68 M.J. 431, 435 (C.A.A.F. 2010) (noting that by pleading guilty, an accused relinquishes his right to contest the prosecution's theory on appeal unless the record discloses matter inconsistent with the plea).

The providence lens is a familiar one. Before accepting a guilty plea, a military judge must determine that there is an adequate basis in law and fact to support the plea. *Inabinette*, 66 M.J. at 321–22. We review a military judge's acceptance of a guilty plea for an abuse of discretion. *Id*. at 322. "A military judge abuses this discretion if he fails to obtain from the accused an adequate factual basis to support the plea—an area in which we afford significant deference"—or if he bases a ruling on an erroneous view of the law. *Inabinette*, 66 M.J. at 322 (citing *United States v. Jordan*, 57 M.J. 236, 238 (C.A.A.F. 2002)). We will overturn a guilty plea only if something in the record of trial raises a substantial basis in law or fact for questioning the plea. *Id.* at 322; *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991).

Here, nothing in the record of trial raises a substantial basis for questioning Appellant's guilty pleas. The military judge properly provided him the elements of violating a lawful order with appropriate definitions and explanations, including that:

> [a]n order, to be lawful, must relate to specific military duty and be one which is authorized under the circumstances. An order is lawful if it is reasonably necessary to safeguard and protect the morale, discipline, and usefulness of the members of a command and is directly connected with the maintenance of good order in the services.

(R. at 125.)

4

Appellant testified that he believed that each MPO related to a specific military duty, in particular the duty to maintain good order and discipline. When asked how the order was directly connected with maintaining good order and discipline, he answered, "It was to not disturb my wife as she's a member of the United States Coast Guard as well, Your Honor" and that disturbing her would potentially disrupt the work environment within her command. (R. at 126.) The stipulation of fact supported these conclusions.

Appellant notes that the military judge did not elicit a separate military purpose for the provisions pertaining to his son. Their son was, however, in his wife's custody, so we do not find that inconsistent with Appellant's stated purpose of the order, nor does it raise a substantial question about his pleas. Appellant was properly apprised of the law, freely and voluntarily admitted the orders were lawful and he violated them, and provided the military judge a sufficient basis to demonstrate that he was in fact and in law guilty. If, to the contrary, Appellant believed that the MPOs lacked a military purpose and unjustifiably deprived him of personal rights, he could have pleaded not guilty and challenged the Government's theory of lawfulness. He chose not to. Nothing presented raises a substantial basis in law or fact to question his guilty pleas and the military judge did not abuse her discretion in accepting them.

## Post-Trial Military Protective Order

Appellant's remaining issues relate to a post-trial MPO issued to Appellant as he was about to be released from confinement. This order: required Appellant to remain one mile from LG and their son and their residences and workplaces; prohibited him from conducting research or taking steps to identify LG's current home address or duty station; required him to remain at least 50 miles from Mobile, Alabama, and seven listed military facilities; required him to inform the unit executive officer of his travel plans and living arrangements for the two weeks following his release from confinement; and required him to check in with the executive officer once a week by phone. The order asserted that it was "based upon [Appellant's] history of violating MPOs, [his] special court-martial convictions for violating those MPOs, and [his] special court-martial convictions for other offenses against MK1 [LG]." (Appendix A, Defense Motion to Attach of 18 Dec 17.) Yet according to an affidavit from the Staff Judge Advocate advising the commander, there was an additional basis for the order: the command was informed on details of

a criminal investigation into allegations that after this trial, Appellant conspired to murder his wife. The affidavit asserts that to protect the integrity of the investigation, they did not disclose this to Appellant until he was ultimately placed in pretrial confinement based on the new allegations. (Appendix 6, Government Motion to Attach of 17 Jan 18.)

While some aspects of the MPO may facially appear quite broad, we are a court of limited jurisdiction, and it is not within our purview to decide on the post-trial order's overall fairness, propriety, or even enforceability. *See United States v. Arness*, 74 M.J. 441, 442 (C.A.A.F. 2015); *United States v. Wuterich*, 67 M.J. 63, 70 (C.A.A.F. 2008); *see also Clinton v. Goldsmith,* 526 U.S. 529, 540 (1999). Instead, we are limited to determining if it created some legal error in this case that would affect the findings or sentence. Art. 59(a), UCMJ. We conclude that it did not.

First, Appellant contends that the MPO constituted unlawful command influence—a question we review *de novo*. *United States v. Salyer*, 72 M.J. 415, 423–24 (C.A.A.F. 2013). Appellant has the initial burden of producing "some evidence" of unlawful command influence. *United States v. Chikaka*, 76 M.J. 310, 313 (C.A.A.F. 2017). As he raises it for the first time on appeal, he must present "something more than an appearance of evil to justify action by an appellate court in a particular case. Proof of command influence in the air, so to speak, will not do." *United States v. Allen*, 33 M.J. 209, 212 (C.M.A. 1991). While the burden-of-production threshold is low, there must be "more than mere allegation or speculation." *Chikaka*, 76 M.J. at 313 (quoting *Salyer*, 72 M.J. at 423); *see also Green v. Widdecke*, 42 C.M.R. 178, 181 (C.M.A. 1970) ("Generalized, unsupported claims of 'command control' will not suffice to create a justiciable issue."). If this threshold burden is met, "the burden shifts to the government to demonstrate beyond a reasonable doubt either that there was no unlawful command influence or that the proceedings were untainted." *United States v. Lewis*, 63 M.J. 405, 413 (C.A.A.F. 2006).

In support of his claim, Appellant proffers the MPO and argues:

By imposing these extensive prohibitions and obligations on the Appellant so long as he remains on appellate leave his commanding officer leveraged his authority under Articles 90 and 92 to burden his statutorily provided Article 66 review. Even if this was not the Commanding Officer's intent, it has the functional effect of

coercing the Appellant to withdraw from appeal, and thereby creates the appearance
of unlawful command influence over the appellate process.

(Appellant's Brief at 21.)

Instead of evidence that the command intended to improperly influence this appellate proceeding, Appellant offers no more than an order he finds overly broad and burdensome, and bald speculation that the commander therefore must have been trying—unsuccessfully, it seems—to force him to withdraw from appellate review. Nothing within the order or the surrounding circumstances supports such an inference. While Appellant complains of the duration of the MPO—the order provided it would be effective until his discharge from the Coast Guard—it is not, under the circumstances, arbitrary or unreasonable, certainly not so much so that it raises an inference or appearance of mal-intent. Rather, it evinces simply an intent for the order to continue in effect for the remainder of the time that Appellant is subject to military orders. We find no evidence that by this or any other provision, the command was improperly trying to influence Appellant to withdraw his appeal. We thus conclude that Appellant has failed to meet his threshold burden, making further fact-finding or burden-shifting unnecessary.

We also believe that an objective, disinterested observer, fully informed of all the facts and circumstances, would not harbor a significant doubt about the fairness of the proceeding. *United States v. Lewis*, 63 M.J. 405, 415 (C.A.A.F. 2006). Accordingly, we conclude that there was neither actual nor apparent unlawful command influence. *Cf. United States v. Johnson*, 54 M.J. 32, 35 (C.A.A.F. 2000) ("The fact that appellant's personal conduct triggered actions and opinions of a personnel-administrative nature did not demonstrate in this case that there was unlawful command influence on the criminal action.").

Next, Appellant contends that the MPO unlawfully increased his punishment and, consequently, violated the terms of his pretrial agreement. We disagree. Both contentions turn on the notion that the MPO was "punishment." It was not. Even if based on a conviction, not all adverse post-trial actions amount to punishment. *See, e.g., United States v. Talkington*, 73 M.J. 212, 215 (C.A.A.F. 2014) (sex offender registration); *United States v. Tschip*, 58 M.J. 275, 277 (C.A.A.F. 2003) (administrative discharge). Instead, we look to whether the action constituted

"'punishment' within the meaning of the criminal law." *United States v. Pena*, 64 M.J. 259, 265 (C.A.A.F. 2007). Here, the MPO did not increase any part of his sentence or relate to the conditions of any part of his sentence. Further, we find no evidence of punitive intent by the command. *See Howell v. United States*, 75 M.J. 386, 394 (C.A.A.F. 2016) (holding that, in the context of illegal pretrial punishment, the record must disclose an intent to punish on the part of the Government). The MPO was not punishment related to this court-martial and was, instead, a collateral, administrative matter over which we have no jurisdiction. *See United States v. Buford,* 77 M.J. 562, 566 (A.F. Ct.Crim.App. 2017), *pet. denied*, 77 M.J. 332 (C.A.A.F. 2018) ("[A] bare claim of illegal punishment, absent some evidence of intent to subject an appellant to illegal post-trial punishment, [does] not establish jurisdiction over collateral pay issues.").

## Decision

We determine that the findings and sentence are correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings and the sentence, as approved below, are affirmed.

Chief Judge MCCLELLAND and Judge KOSHULSKY concur.



For the Court,

Sarah P. Valdes
Clerk of the Court