*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
FULTON, HITESMAN, and CRISFIELD,
Appellate Military Judges

_____

**UNITED STATES**
Appellee

**v.**

**Nhubu C. CHIKAKA**
Staff Sergeant (E-6), U.S. Marine Corps
Appellant

**No. 201400251**

Decided: 14 June 2019

Appeal from the United States Navy-Marine Corps Trial Judiciary Upon further review following remand from the United States Court of Appeals for the Armed Forces. Military Judge: Lieutenant Colonel David M. Jones, USMC. Sentence adjudged 14 March 2014 by a general court-martial convened at Marine Corps Recruit Depot, Parris Island, South Carolina, consisting of officer and enlisted members. Sentence approved by the convening authority: reduction to pay grade E-1, forfeiture of all pay and allowances, confinement for 10 years,[1] and a dishonorable discharge.

For Appellant: Lieutenant Doug Ottenwess, JAGC, USN.

For Appellee: Captain Brian L. Farrell, USMC.

---

[1] The Convening Authority, as a matter of clemency, reduced the adjudged confinement from 12 years to 10 years.

Senior Judge FULTON delivered the opinion of the Court, in which Senior Judge HITESMAN and Judge CRISFIELD joined.

_____

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 30.2.**

_____

FULTON, Senior Judge:

A panel of officer and enlisted members sitting as a general court-martial convicted the appellant, contrary to his pleas, of one specification of attempted abusive sexual contact, nine specifications of violation of a general order, one specification of wrongful sexual contact, one specification of abusive sexual contact, four specifications of obstruction of justice, one specification of indecent language, and one specification of adultery, in violation of Articles 80, 92, 120, and 134, Uniform Code of Military Justice (UCMJ).[2]

## I. BACKGROUND

### A. Factual background

The appellant was a recruiter. In the course of his duties, he met four female high school students who were interested in becoming Marines. The appellant sent the girls thousands of inappropriate electronic communications, and engaged in unwanted sexual activity with two of them. The appellant plied a third girl with alcohol and began an adulterous relationship with her. The appellant encouraged the girls not to disclose his conduct, and continued to so encourage them even after his offenses were reported.

### B. The appellant's court-martial

We are now concerned only with the presentencing phase of the trial. During presentencing, the military judge admitted a photograph of the Commandant of the Marine Corps with a victim's great grandfather, who was receiving the Congressional Gold Medal at a ceremony. The military judge also admitted extensive testimony from the appellant's commanding officer (CO), during which the trial counsel asked the CO to explain "how important

---

[2] 10 U.S.C. §§ 880, 892, 920, and 934 (2012).

it is to set a strong example for general deterrence"[3] in the CO's recruiting district. The CO obliged with a long response in which he contrasted the appellant's offenses with less serious forms of recruiter misconduct, such as disregarding an applicant's minor legal troubles or medical issues. The CO appealed to the members to award a sentence that delivered a message to other recruiters: that "[i]f you do this, everything around you, generally speaking, is going to stop . . . . There's no way to lessen the blow. It's a significant blow."[4]

During argument on the sentence, the trial counsel reminded the members of the CO's testimony, telling the members that general deterrence was a "big issue." "[The CO] talked about . . . the need to send a strong message inside the Marine Corps, not just to the high schools and the community, but for all the . . . recruiters out there right now . . . ."[5] He then asked the members to award a sentence that included ten years' confinement. The members awarded one that included 12 years' confinement.

## C. Appellate history

This case is before us for a third time. On 24 June 2015, we set aside the convening authority's action so that the appellant could submit clemency matters. In his ensuing action, the convening authority disapproved confinement in excess of ten years as an act of clemency. After the case was returned to us, we considered 13 assignments of error.[6] A few of these assignments of error are relevant now.

We agreed with the appellant that three of the four obstruction specifications represented an unreasonable multiplication of charges, and consolidated them into one specification. We found that the military judge abused his discretion under Military Rule of Evidence 403 when he admitted testimony about the anti-misconduct campaign Operation Restore Vigilance.[7] We also found that the military judge abused his discretion under Rule for Courts-Martial 1001 when he admitted the testimony from the appellant's CO urging

---

[3] Record at 871.

[4] *Id.* at 872.

[5] *Id.* at 892-93.

[6] *See generally United States v. Chikaka*, No. 201400251, unpub. op. (N-M. Ct. Crim. App. 12 Apr. 2016).

[7] MILITARY RULE OF EVIDENCE (MIL. R. EVID.) 403, MANUAL FOR COURTS-MARTIAL (MCM), UNITED STATES (2012 ed.).

a harsh sentence that would provide general deterrence.[8] We did not find, however, that the military judge erred by admitting the photograph of the Commandant, and we did not find that the appellant's trial had been affected by unlawful command influence (UCI).

We reassessed the appellant's sentence, approving a sentence of total forfeitures, reduction to pay grade E-1, confinement for five years, and a dishonorable discharge.

The Court of Appeals for the Armed Forces (CAAF) granted review. That court found that the CO's appeal to members for a harsh sentence constituted some evidence of UCI on the presentencing portion of the case.[9] In a footnote, the CAAF also wrote that they were "concerned about the admission of the Commandant's photograph," but did not decide whether admission of the photograph constituted some evidence of UCI.[10] Before the CAAF, the government had urged that any prejudice associated with possible UCI had been cured by our reassessment of the appellant's sentence. But the CAAF noted that we had granted relief because of an unreasonable multiplication of charges and evidentiary errors, not UCI.[11] The CAAF remanded the case so that we could determine whether the case was affected by UCI and, if it was, whether any additional sentencing relief is warranted.[12]

We conclude that actual UCI affected the appellant's case. We further conclude that our earlier relief for unreasonable multiplication of charges and evidentiary error, though substantial, does not completely extinguish the possibility that the appellant was prejudiced by UCI. We conclude that we are able to fashion a remedy that cures, beyond a reasonable doubt, any possible prejudice and upholds public confidence in the proceedings.

## II. DISCUSSION

### A. Law applicable to UCI

The prohibition against UCI is codified in Article 37, UCMJ, which states in part, "[n]o person subject to this chapter may attempt to coerce or . . . influence the action of a court-martial or any other military tribunal or any

---

[8] RULE FOR COURTS-MARTIAL (R.C.M.) 1001, MCM, UNITED STATES (2012 ed.).

[9] *United States v. Chikaka*, 76 M.J. 310, 313 (C.A.A.F. 2017).

[10] *Id.* n.5.

[11] *Id.* at 314.

[12] *Id.*

member thereof, in reaching the findings or sentence in any case, or the action of any convening . . . authority with respect to his judicial acts."[13] UCI can be actual or apparent, and we review cases for UCI *de novo*.[14]

We understand the CAAF's mandate in this case to require us to determine whether the appellant's sentence was affected by either actual or apparent UCI. The tests for actual and apparent UCI are similar, though not identical.

Under the familiar burden-shifting test announced by the CAAF in *United States v. Biagase*, to prevail on a claim of actual unlawful command influence, the appellant must preliminarily show: (1) facts which, if true, constitute unlawful command influence; (2) that the proceedings were unfair; and (3) that the unlawful command influence was the cause of the unfairness.[15] The initial burden of showing potential unlawful command influence is low, but is more than mere allegation or speculation.[16] The quantum of evidence required to raise unlawful command influence is "some evidence."[17]

Once an issue of actual unlawful command influence is raised by some evidence, the burden shifts to the government to rebut the allegation beyond a reasonable doubt that (1) the predicate facts do not exist; (2) the facts do not constitute unlawful command influence; or (3) the unlawful command influence did not affect the findings or sentence.[18]

We have been specifically directed to evaluate the sentencing portion of this case in light of the CAAF's decision in *United States v. Boyce*.[19] In *Boyce*, the CAAF announced a two-pronged test for apparent UCI. To prevail, the appellant must show facts, which if true, would constitute UCI. Second, he must show that the UCI placed an intolerable strain on the public's perception of the military justice system because an objective, disinterested observer, fully informed of all the facts and circumstances, would harbor a significant doubt about the fairness of the proceeding.[20]

---

[13] 10 U.S.C. §837(a) (2012).

[14] *United States v. Harvey*, 64 M.J. 13, 19 (C.A.A.F. 2006).

[15] 50 M.J. 143, 150 (C.A.A.F. 1999).

[16] *United States v. Stoneman*, 57 M.J. 35, 41 (C.A.A.F. 2002).

[17] *United States v. Ayala*, 43 M.J. 296, 300 (C.A.A.F. 1995).

[18] *Biagase*, 50 M.J. at 151.

[19] 76 M.J. 242 (C.A.A.F. 2016).

[20] *Id*. at 249.

The *Boyce* court set forth an analytical framework for courts to use in applying this standard. First, an appellant must show some evidence that UCI occurred.[21] This is a low burden, but the showing must consist of more than "mere speculation."[22]

Once an appellant presents some evidence of UCI, the burden shifts to the government to prove beyond a reasonable doubt that "either the predicate facts proffered by the appellant do not exist, or the facts as presented do not constitute unlawful command influence."[23] If the government meets this burden, no further analysis is necessary.[24]

"If the government does not meet its burden of rebutting the allegation at this initial stage, then the government may next seek to prove beyond a reasonable doubt that the unlawful command influence did not place 'an intolerable strain' upon the public's perception of the military justice system and that 'an objective disinterested observer, fully informed of all the facts and circumstances, would not harbor a significant doubt about the fairness of the proceeding."[25] "A determination the appellant was not personally prejudiced, or that the prejudice caused by the UCI was later cured, is a significant factor to which we must give considerable weight when deciding whether the UCI placed an 'intolerable strain' on the public's perception of the military justice system."[26] But such a determination is not dispositive. Rather, we will consider the totality of the evidence in evaluating alleged apparent UCI.[27]

## B. Application of law to the appellant's case

### 1. Actual UCI

In this case, the CAAF has already determined that the record contains some evidence of UCI in the form of the CO's testimony. This satisfies the first prong of the tests for actual UCI. The CAAF has also directed us to consider whether the admission of the Commandant's picture also constitutes some evidence of UCI. The government argues that the picture is relevant

---

[21] *Id.*

[22] *Id.* (quoting *United States v. Salyer*, 72 M.J. 415, 423 (C.A.A.F. 2013)).

[23] *Id.*

[24] *Id.*

[25] *Id.* at 249-50.

[26] *Id.* at 248, n 5.

[27] *Id.* at 249.

aggravation evidence because it "corroborated [the victim's] testimony that, though her great grandfather was a 'large part' of why she joined the Marine Corps, she was unable to talk to him about what happened to her."[28] But it was not clear to the CAAF—and it is not clear to us—how the picture serves this purpose. The CAAF found that admission of the picture "raises the specter of the Government improperly inserting the Commandant into the deliberation room."[29] We find that it constitutes some evidence of UCI.

This brings us to the second step of the analysis under *Biagase* in which the government must demonstrate beyond a reasonable doubt that either the predicate facts do not exist or that the facts as presented do not constitute UCI. The government argues that given the procedural posture of this case, the predicate facts no longer exist. We have already reassessed the sentence, and accounted for the erroneous admission of the CO's testimony. This, according to the government, "had the practical and legal effect of removing the testimony from consideration for [the appellant's] approved sentence," thereby eliminating the predicate facts supporting the UCI allegation.[30] We, however, do not agree that we should accept our initial sentence reassessment as definitively eliminating the predicate facts. The CO's testimony was presented and considered by the members, and it represents at least some evidence of UCI. The CAAF has directed us to use the applicable UCI framework to determine whether the proceedings were affected by UCI. Our earlier reassessment under *United States v. Sales* was appropriate to our initial conclusion. But we are not inclined to rely on that reassessment to satisfy *Biagase*'s second prong. Additionally, the CAAF directed us to consider whether the admission of the picture of the victim's great grandfather with the Commandant prejudiced the appellant by inserting the Commandant into the deliberation room. We did not consider the admission of this picture in our previous sentence reassessment. We therefore cannot rely entirely on our earlier analysis to determine that the predicate facts do not exist.

We are also not convinced beyond a reasonable doubt that the facts as presented do not constitute UCI. To the contrary, the government introduced the testimony of the appellant's commanding officer, who appealed directly to the members (one of whom was his subordinate) for a harsh sentence. This constitutes actual UCI.[31] Similarly, the government has not convinced us be-

---

[28] Government's Brief at 16.

[29] 76 M.J. at 313 n.5.

[30] Government's Brief at 14-15.

[31] *United States v. Cherry*, 31 M.J. 1, 5 (C.M.A. 1990).

yond a reasonable doubt that the introduction of the Commandant's picture did not insert the Commandant into the deliberation room. We will therefore proceed to the third step of the analysis.

The third step requires us to determine whether the unlawful command influence affected the sentence.[32] The burden is on the government to show beyond a reasonable doubt that the convening authority's and our modifications of the appellant's sentence have cleansed the record of the taint of actual and apparent UCI.

To reach our conclusion we weigh the nature and severity of the UCI and the magnitude of our earlier sentence modification.[33] We find that the UCI in this case had the capacity to do some, but not catastrophic mischief. Addressing first the commanding officer's testimony, we find that the information presented in the erroneously admitted testimony would have been known to the members. The panel included a Marine with ten years' recruiting experience. That the appellant's serious offenses, which included abusive sexual contact, were particularly egregious where the accused is a recruiter and the victims were young and vulnerable potential recruits would have been appreciated by the panel without the CO's testimony. The appropriateness of a sentence that supported general deterrence would also have suggested itself without the CO having requested it, and doubtless the trial counsel would have argued the same point.

As for the picture of the Commandant, we find that any UCI associated with the picture's admission would have been less substantial than that of the CO's testimony. The picture was not accompanied by any text or information that could be seen as directing a particular result in this case. The appellant argues that the picture acted as a conduit to the Commandant's "Heritage Tour,"[34] and served to remind the members of expectations the Commandant expressed at that time. The CAAF, however, has found that the record contains no evidence that the Heritage Tour has affected this case. We agree.

Against the prejudice attributable to UCI we must balance the significant reduction in the appellant's sentence we have already awarded. The members awarded twelve years' confinement, and the CA reduced that amount to ten.

---

[32] *Biagase*, 50 M.J. at 151.

[33] *See United States v. Harvey*, 64 M.J. 13, 21 (C.A.A.F. 2006).

[34] *See United States v. Easterly*, No. 201300067, unpublished op. (N-M. Ct. Crim. App. 31 Jan 2014) (describing the Commandant's "Heritage Tour" and the related effort to curb indiscipline in the Marine Corps).

In order to remedy an unreasonable multiplication of charges and erroneously admitted sentencing testimony (including the CO's testimony), we approved only five years—a reduction of nearly 60 percent of the appellant's awarded sentence.

Although this represents a substantial reduction, we did not arrive at that determination by evaluating the sentence under *Boyce* or any other relevant UCI precedent. Nor did we consider the admission of the Commandant's picture as actual or apparent UCI in arriving at a remedy. Although our initial remedy was not calculated specifically to address UCI, we are convinced that we can fashion a remedy that ensures beyond a reasonable doubt that any taint from UCI has been eliminated. We are convinced beyond a reasonable doubt that a sentence extending to total forfeitures, reduction to pay grade E-1, four years' confinement, and a dishonorable discharge removes any possibility that the appellant remains prejudiced by UCI.

*2. Apparent UCI*

We next consider whether the case is affected by apparent UCI using the framework the CAAF announced in *Boyce*. The first two steps of the analysis are identical to those in *Biagase*. Again, we note that the CAAF has determined that the record contains some evidence of UCI and that the government is not able to rebut this evidence by demonstrating that the predicate facts do not exist, or that that they do not constitute UCI.

The third step of the analysis under *Boyce* requires us to determine whether the unlawful command influence placed "an intolerable strain" upon the public's perception of the military justice system and whether "an objective disinterested observer, fully informed of all the facts and circumstances, would not harbor a significant doubt about the fairness of the proceeding."[35] We have already determined that we can remedy the actual UCI in this case and eliminated its prejudice to the appellant. While an absence of prejudice to the appellant does not conclusively demonstrate the absence of apparent UCI, it is a factor to which we attach considerable weight.[36] We are convinced beyond a reasonable doubt that the remedy we have provided for actual UCI would leave a fully informed observer satisfied that the appellant's proceedings have been fair.

---

[35] *Boyce*, 76 M.J. at 249 (quoting *Salyer*, 72 M.J. at 423).

[36] *Id.* at 248, n. 5.

### III. CONCLUSION

The findings having been previously approved by the CAAF, we approve only so much of the sentence as extends to total forfeitures, reduction to pay grade E-1, four years' confinement, and a dishonorable discharge are approved.

Senior Judge HITESMAN and Judge CRISFIELD concur.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court

10